STATE OF NORTH CAROLINA v. MICHAEL WAYNE MARTIN

No. 8026SC1182

(Filed 2 June 1981)

1. Homicide § 21.9— manslaughter—sufficiency of evidence

In a prosecution for involuntary manslaughter evidence was sufficient to be submitted to the jury where it tended to show that deceased was shot five

State v. Martin

or six times, with four shots entering his back, another entering the back of his forearm, and one striking his left cheek; the lethal wound was caused by a shot into deceased's back, going through his heart; and when deceased was shot, he was not inside defendant's trailer but in the yard, some distance from the trailer.

**2. Homicide § 28— self-defense—deceased's intent to kill defendant—instruction not required**

There was no merit to defendant's contention that the trial court erred in its instruction to the jury on self-defense by failing to instruct that the jury should consider any statement by deceased of an intent to kill defendant, since the court fully and correctly instructed the jury on the law of self-defense, and defendant made no request to the court to charge concerning deceased's alleged threats to defendant.

**3. Homicide § 28.4— defense of home—instructions proper**

The trial court did not err in giving its charge on defense of the home in connection with its instruction on self-defense; moreover, since neither the State's nor defendant's evidence nor any combination thereof supported the defense of habitation, defendant was not entitled to such an instruction, and any error therein was harmless and not prejudicial to defendant.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 31 July 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 April 1981.

Defendant was convicted of voluntary manslaughter and appeals from the sentence of imprisonment.

The state's evidence showed that defendant and his former wife, Joann Shoemaker, had a child, Brent, and on 22 February 1980 they had a heated discussion by telephone concerning the child. Joann got off work about 11:00 p.m. and, with her fiance, David Morelock, proceeded to defendant's house trailer to talk with him about Brent. Defendant was not at his home, so Joann and David went to the home of defendant's mother in their efforts to locate him. Not finding defendant there, they decided to go back to his house to see if he had returned home.

David went to the door and knocked, and defendant, clothed in his underwear, answered the door. David told defendant they had to talk about some things. Joann heard a slap and saw that David had defendant by the arm. He grabbed defendant's tee shirt and they went into the house. Joann followed them into the house. Defendant had gone into a room, evidently closing the door. Joann went outside, saw the window was open, and thought

defendant had left the room. They decided to leave and had entered their van when defendant came running across the yard. He ran to his trailer and went inside. David got out of the van and had walked about halfway to the door of the trailer when a gun appeared from the doorway and defendant started shooting at David. David turned around as if to run. Seven shots were fired and David was hit in his left cheek and four or five places in his back and the back of his arm. In the opinion of the medical examiner for Mecklenburg County, the gunshot wound causing death entered David in the left back and went through the left lung and heart.

Defendant's evidence showed that he had watched television at his mother's home till about midnight and then went home. He had a Mossburg .22-caliber rifle in his home. He went to bed about 12:35 and then heard a knock at the door. He went to the door, thinking that it was his wife at the door. When he opened the door, David came in on him and pushed him across the room. He got away and ran into the bedroom, locking the door. While David was beating on the door, defendant went out the window and ran to his aunt's house and then to his father-in-law's house, but was unable to get into either place. He hid in the woods and started back to his trailer because he thought David and Joann had gone. Then he saw David coming across the field, hollering. David threatened to kill him. He ran on toward the trailer, with David behind him running "fullstream." He got into the trailer, but David kept him from shutting the door. David continued to threaten him. Defendant grabbed the rifle, which was behind the door, and backed up into the kitchen as David came through the door. When David came on him, he started firing and continued to fire till the gun clicked. David headed for the door of the trailer, and defendant grabbed his pants and ran out the back door into the woods. He went to his father-in-law's house and the police came. He admitted he had done the shooting and told the officers where the gun was located.

*Attorney General Edmisten, by Assistant Attorney General Marilyn R. Rich, for the State.*

*Bailey, Brackett & Brackett, by Martin L. Brackett, Jr., for defendant appellant.*

MARTIN, (Harry C.), Judge.

[1] Defendant first argues there was insufficient evidence to overcome his motions to dismiss, contending that the uncontroverted evidence showed defendant acted in self-defense and in defense of his home. The evidence, considered in the light most favorable to the state, *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971), shows that the deceased was shot five or six times, with four shots entering his back, another entering the back of his forearm, and one striking his left check. The lethal wound was caused by a shot into David's back, going through his heart. When David was shot he was not inside the trailer, but in the yard, some distance from the trailer. This evidence is sufficient to carry the state's case to the jury. Where, as here, the state does not introduce exculpatory evidence, defendant's evidence tending to exculpate him is to be disregarded on motion for nonsuit. *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967). The assignment of error is without merit.

[2] Defendant contends the court erred in its instruction to the jury on self-defense by failing to instruct that the jury should consider any statement by deceased of an intent to kill defendant. In summarizing the evidence, the court included this testimony. Later, in its charge on self-defense, the court stated:

> It is for you, the Jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to him at the time and place in question. In making this determination, you consider all of the circumstances revealed by the evidence, as you find them to have existed from the evidence, including the size, age, and strength of the defendant, as compared to David Morelock, the fierceness of the assault, if any, upon the defendant by the deceased and whether or not the deceased had a weapon or some object in his possession.

Defendant made no request to the court to charge concerning deceased's alleged threats to defendant. The court is not required to mention all the testimony in applying the law of self-defense to the evidence. Where the court fully and correctly instructs the jury upon the law of self-defense, it is not error to refuse to give defendant's requested instructions. *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769, *cert. denied*, 368 U.S. 851 (1961). Here, defendant made no such request. We find no prejudicial error in this assignment.

Further, defendant argues the court erred in its self-defense charge by instructing with respect to defendant being the aggressor when there was no evidence to sustain a finding that defendant was the aggressor. The evidence set out above clearly supports the instruction. The case is factually distinguishable from *State v. Ward*, 26 N.C. App. 159, 215 S.E. 2d 394 (1975), where there was no evidence to support an instruction that defendant was an aggressor. This contention is overruled.

We find no error in the court's charge concerning burden of proof on the self-defense issue. The court properly placed the burden of proof upon the state to prove beyond a reasonable doubt that defendant did not act in self-defense. The court repeated this instruction at least three times in its charge.

[3] Finally, defendant assigns error to the court's instructions on defense of the home. The trial court gave its charge on defense of the home in connection with its instructions on self-defense. We find no error in so doing. " '[T]he rules governing the right to defend one's *habitation* against *forcible entry by an intruder* are substantially the same as those governing his right to defend himself.' " *State v. McCombs*, 297 N.C. 151, 156, 253 S.E. 2d 906, 910 (1979) (emphasis in original). Defendant's evidence indicates a shooting inside the trailer, with defendant resisting in an alleged assault. The state's evidence indicates an unprovoked shooting by defendant while his victim was in the yard, not making any effort to forcibly enter defendant's home. Where one acts to prevent a forcible entry of his home, the defense of habitation arises. *Id.* Here, neither the state's evidence nor the defendant's evidence, nor any combination thereof, supports this defense. Defendant was not entitled to the challenged instruction. Any error therein was harmless and not prejudicial to defendant. Further, a review of this instruction discloses it to be in accord with *McCombs, supra*, where the Court held:

> The North Carolina cases indicate that the use of deadly force in defense of the habitation is justified only to *prevent* a forcible entry into the habitation under such circumstances (e.g., attempted entry accompanied by threats) that the occupant reasonably apprehends death or great bodily harm to himself or other occupants at the hands of the assailant or believes that the assailant intends to commit a felony.

297 N.C. at 156-57, 253 S.E. 2d at 910 (emphasis in original). Here, no combination of the evidence supports a finding that defendant shot deceased while he was attempting to forcibly enter the trailer. We find no prejudicial error in the challenged instruction.

No error.

Chief Judge MORRIS and Judge HILL concur.