STATE OF NORTH CAROLINA v. MELVIN LEE MARSHALL

No. 911SC559

(Filed 3 March 1992)

**Homicide § 637 (NCI4th) — victim's attempted reentry into home — defense of habitation — defendant entitled to instruction**
　　Defendant was entitled to an instruction on the defense of habitation where defendant's evidence tended to show that the victim entered defendant's home, assaulted him, left defendant's home, and was shot by defendant as he attempted to reenter defendant's home, and the trial court's error in failing so to instruct entitled defendant to a new trial.

**Am Jur 2d, Homicide §§ 174, 175, 177, 514.**

APPEAL by defendant from judgment entered 14 February 1991 in DARE County Superior Court by *Judge Herbert W. Small*. Heard in the Court of Appeals 18 February 1992.

STATE v. MARSHALL

[105 N.C. App. 518 (1992)]

*Lacy H. Thornburg, Attorney General, by V. Lori Fuller, Assistant Attorney General, for the State.*

*Aycock, Spence & Butler, by W. Mark Spence, for defendant-appellant.*

GREENE, Judge.

The defendant appeals from a judgment entered 14 February 1991, which judgment was based upon a jury verdict convicting the defendant of voluntary manslaughter.

In this case, we must view the evidence in the light most favorable to the defendant. *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (consider evidence of defenses in light most favorable to defendant). Viewed accordingly, the evidence tends to show the following: In June, 1990, the defendant lived in a trailer in a mobile home park in Buxton, North Carolina. Kil Jennette (Jennette) lived in the same mobile home park as the defendant in a trailer located close to the defendant's trailer. On two occasions in May, 1990, the defendant and Jennette argued and fought over the volume at which each of them played music from stereos. At approximately 10:00 p.m. on 18 June 1990, neighbors of the defendant and Jennette heard "screaming and hollering" coming from the direction of the defendant's trailer. One neighbor, Nacie Barnett, testified that a few seconds after he had heard the screaming, he heard two gunshots within one or two seconds of each other coming from the same direction as the screaming. Another neighbor, Michael Rak (Rak), also heard these gunshots. Approximately five minutes later, the defendant arrived at Rak's residence "in a state of almost shock bewilderment" and said, "Call the cops. I've shot someone. I think he's dying." Although the defendant remained relatively quiet until the police arrived, the defendant did tell Rak that Jennette had entered his trailer and had hit him with a 2 x 2 stick.

Doctor Page Hudson, a forensic pathologist, examined Jennette's body and discovered that Jennette had been shot in his left lower back at roughly his beltline and had died as a result of this injury. Furthermore, he also determined that Jennette had beverage alcohol in his system "to a concentration of 110 milligrams percent. That is the same as a point 11 percent on the Breathalyzer scale."

The defendant testified on his own behalf. His evidence tends to show the following: At approximately 10:00 a.m. on 18 June 1990, he and Eugene Clinton (Clinton) decided to take the day off from work because materials for a roofing job they were doing had not arrived. The defendant went home and began drinking beer while cleaning his trailer and doing other household chores. At about 6:00 p.m., Greg Austin (Austin) and Cord Powell (Powell) arrived at the defendant's trailer. The three of them sat around the defendant's trailer, talked, and drank beer. Sometime later, Clinton and his girlfriend came over to the defendant's trailer, and the five of them continued to talk and drink beer. Around 8:30 p.m., Austin and Powell left, and the defendant and Clinton began talking about the job they had to do the next day. Clinton's girlfriend saw the defendant's shotgun in the living room and wanted to take a closer look at it. The defendant unloaded it and allowed her and Clinton to examine it. He explained that the reason he kept it in the living room was because he had been having trouble with a local dog getting into his trash. After they had examined it, the defendant reloaded the shotgun and leaned it against the wall behind a chair about six to eight feet from the trailer door. Around 10:00 p.m., Clinton and his girlfriend left the defendant's trailer.

After everyone had gone, the defendant got another beer, turned up the music a little bit, sat down on his couch which was located in the living room opposite the trailer door, and began to think about his job. At that point, Jennette opened the trailer door, ran inside carrying an approximately three-foot-long 2 x 2 stick, and screamed that he was going to kill the defendant. As Jennette hit the defendant with the stick, the defendant covered himself to avoid blows to his head. The defendant then fought back. He tried to grab the stick, but Jennette slipped onto the defendant's back and pulled the stick to the defendant's throat. As the fighting eased up temporarily, the defendant tried to talk to Jennette. Soon, however, the fighting intensified. The defendant managed to push Jennette out of the trailer and onto the steps. Jennette drew the stick back "like a bat" and began yelling at the defendant. As Jennette lowered the stick, the defendant reached over to turn the volume down on his stereo. When he did, Jennette raised the stick and began moving towards the trailer. The defendant jumped backwards, and Jennette entered the trailer for a second time. They struggled, but the defendant again managed to

push Jennette out of the trailer. At this point, Jennette and the defendant had been fighting for the majority of five to eight minutes. The defendant was tired, scared, and unsure of his ability to continue to fight back. The defendant then grabbed his shotgun, and when he looked over his shoulder, he saw Jennette coming back into the trailer with the stick raised in the air. The defendant brought the butt of his shotgun to his waist and kept the barrel up. The shotgun discharged as Jennette was facing him just inside the doorway of the trailer. The defendant did not know if he had hit Jennette with his first shot. As Jennette jumped backwards, the defendant jumped forwards and quickly fired the shotgun a second time. The defendant fired both shots from inside his trailer. After firing the second shot, the defendant left the trailer and discovered Jennette on the ground. He then went inside his trailer, put on his socks, shoes, and a shirt, went to Rak's house, and told Rak to call the police.

The defendant was tried on the charge of first degree murder. The defendant requested in writing jury instructions on self defense and the defense of habitation. The trial court instructed the jury on self defense, but not on the defense of habitation. The jury returned a verdict of guilty of voluntary manslaughter.

---

The dispositive issue is whether a defendant is entitled to an instruction on the defense of habitation where the defendant's evidence tends to show that a person entered the defendant's home, assaulted the defendant, left the defendant's home, and was shot by the defendant as he attempted to re-enter the defendant's home.

The defendant argues that the trial court erred in refusing to instruct the jury on the defense of habitation. We agree.

"In determining whether to give the substance of an instruction concerning a defense, . . . the trial court must . . . assess the evidence first for the legal principles it implicates, and second for the sufficiency of the evidence itself." *State v. Clark*, 324 N.C. 146, 161, 377 S.E.2d 54, 63 (1989). The defendant met the first prong of this test. The North Carolina Supreme Court has stated the legal principles of defense of habitation as follows:

> A person has the right to use deadly force in the defense of his habitation in order to *prevent* a forcible entry, even if the intruder is not armed with a deadly weapon, where

the attempted forcible entry is made under such circumstances that the person reasonably apprehends death or great bodily harm to himself or the occupants of the home at the hands of the assailant or believes that the assailant intends to commit a felony.

*State v. Jones*, 299 N.C. 103, 107, 261 S.E.2d 1, 5 (1980) (emphasis added). The defendant's evidence implicates these legal principles in that it tends to show that the defendant used deadly force to prevent an intruder armed with a three-foot-long 2 x 2 stick from forcibly entering his home.

"The second prong of the trial court's test for whether the evidence mandates an instruction requires that the court measure the substantiality of the evidence." *Clark*, 324 N.C. at 161, 377 S.E.2d at 63. Where the defendant's or the State's evidence when viewed in the light most favorable to the defendant discloses facts which are "legally sufficient" to constitute a defense to the charged crime, the trial court must instruct the jury on the defense. *Id.; Mash*, 323 N.C. at 348, 372 S.E.2d at 537; *Jones*, 299 N.C. at 107, 261 S.E.2d at 5 (defendant may produce evidence or rely on State's evidence to establish defense of habitation). With regard to the defense of habitation, the measure of legal sufficiency is the "any competent evidence" standard. *See Clark*, 324 N.C. at 162, 377 S.E.2d at 64; *Jones*, 299 N.C. at 107, 261 S.E.2d at 5; *State v. Miller*, 267 N.C. 409, 412, 148 S.E.2d 279, 282 (1966). Therefore, if there is any competent evidence in the record when viewed in the light most favorable to the defendant from which the jury could determine that the defendant acted to prevent a forcible entry into his home and that the defendant reasonably apprehended death or great bodily injury at the hands of the intruder, then the defendant is entitled to an instruction on the defense of habitation.

The defendant's evidence raises the issue of defense of habitation. From the defendant's evidence the jury could infer that Jennette ran unannounced into the defendant's home carrying a large stick and screaming that he was going to kill the defendant; that Jennette hit the defendant with the stick forcing the defendant to protect himself from potentially lethal strikes to his head; that Jennette also tried to choke the defendant with the stick; that the defendant twice repelled Jennette's attacks, but after five to eight minutes of nearly uninterrupted brawling, the defendant became weak and more afraid for his safety; that he was unsure

of his ability to continue to repel Jennette; that after he had pushed Jennette out of his home for a second time, he reached over and got his shotgun; and that the defendant shot and killed Jennette as he was entering the defendant's home for the third time with the stick in his hand. This evidence, if accepted by the jury, would support a determination by the jury that the defendant acted to prevent Jennette from forcibly entering his home and that the defendant reasonably apprehended death or great bodily harm to himself at the hands of Jennette. *State v. Martin*, 52 N.C. App. 326, 330, 278 S.E.2d 315, 318, *disc. rev. denied*, 303 N.C. 317, 281 S.E.2d 390 (1981) (defense arises when occupier acts to prevent forcible entry of home).

That Jennette was shot in the lower back does not on these facts eliminate the necessity of the defense of habitation instruction, and the State does not argue otherwise. We are not prepared to hold as a matter of law that under the circumstances facing the defendant, he should have fired only one shot and then waited to ascertain whether that one shot had repelled Jennette's attempted forcible re-entry. That issue is for the jury to decide after proper instructions on the defense of habitation. Furthermore, the facts presented here are analogous to the facts in *State v. Hedgepeth*, 46 N.C. App. 569, 265 S.E.2d 413, *disc. rev. denied*, 301 N.C. 100 (1980), in which case this Court held that the facts required an instruction of the defense of habitation. In *Hedgepeth*, an intruder "peeped" around the door frame to the defendant's home, said he was going to kill the defendant, pulled his head back out of the doorway, and again "peeped" around the door frame. *Id.* at 570, 265 S.E.2d at 415. The defendant then shot the intruder in the neck because it was the only body part of the intruder visible to the defendant. *Id.* Despite the fact that the intruder was only "peeping" around the door frame and not actually on his way into the defendant's home when the defendant shot him, this Court held that the defendant was entitled to the defense of habitation instruction. *Id.* at 573, 265 S.E.2d at 416. Likewise, in this case, the jury, not this Court, must decide "whether [the] defendant was acting within the framework of the defense of habitation when he shot the decedent." *Id.*

The State argues, however, that because Jennette had already entered the defendant's home before his third attempted forcible entry, the defendant was only entitled to an instruction on self defense. We disagree. We realize that once an intruder enters

a person's home, "the usual rules of self-defense replace the rules governing defense of habitation, with the exception that there is no duty to retreat." *State v. McCombs*, 297 N.C. 151, 157, 253 S.E.2d 906, 910 (1979). Under this rule, had Jennette been *inside* the defendant's home when the defendant shot and killed him, the defendant would not be entitled to an instruction on defense of habitation. *State v. Lilley*, 78 N.C. App. 100, 107, 337 S.E.2d 89, 93-94 (1985), *aff'd*, 318 N.C. 390, 348 S.E.2d 788 (1986) (defendant not entitled to defense of habitation instruction where defendant shot victim in bedroom of defendant's home); *Martin*, 52 N.C. App. at 330, 278 S.E.2d at 318 (defendant not entitled to defense of habitation instruction where defendant shot and killed victim inside defendant's home). However, the fact that Jennette had *previously* entered the defendant's home and had been repelled does not eliminate the requirement for the instruction where the defendant's evidence tends to show that Jennette was shot while attempting to *forcibly re-enter* the defendant's home. *See Hedgepeth*, 46 N.C. App. at 570, 265 S.E.2d at 415 (defendant shot decedent as decedent threatened to re-enter defendant's home and kill defendant). The defense of habitation is not limited to the situation where the occupant is unaware of the identity and motive of an intruder. *Id.* at 572, 265 S.E.2d at 416. To the contrary, "the defense is limited to the situation where one shoots in order to prevent a forcible entry into his habitation." *Id.* Accordingly, on the evidence presented, although the defendant was familiar with his intruder's identity and motive, he was entitled to have the jury instructed on the defense of habitation, and the trial court's failure to instruct the jury on this substantial feature of the case was error. *Jones*, 299 N.C. at 107, 261 S.E.2d at 5 (when supported by competent evidence, defense of habitation is substantial feature of case entitling defendant to instruction); *see* N.C.G.S. § 15A-1232 (1988); *State v. Rose*, 323 N.C. 455, 458, 373 S.E.2d 426, 428 (1988) (failure to instruct on substantial feature of case is error); *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (when supported by competent evidence, self defense is substantial feature of case entitling defendant to instruction).

Having determined that the trial court erred in failing to instruct the jury on the defense of habitation, we must decide whether this error entitles the defendant to a new trial. N.C.G.S. § 15A-1443 (1988); *see Mash*, 323 N.C. at 349, 372 S.E.2d at 538 (failure to instruct on voluntary intoxication viewed under N.C.G.S. § 15A-1443);

STATE v. MARSHALL

[105 N.C. App. 518 (1992)]

*State v. Wallace*, 104 N.C. App. 498, 505, 410 S.E.2d 226, 230 (1991) (instructional errors viewed under N.C.G.S. § 15A-1443). We conclude that it does.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 35 L.Ed.2d 297, 308 (1973). A corollary to this right is the defendant's right to establish a defense. *Id.* at 294, 35 L.Ed.2d at 308; *Washington v. Texas*, 388 U.S. 14, 17-19, 18 L.Ed.2d 1019, 1022-23 (1967). Where, in cases like this, there is sufficient evidence to support an instruction on the defense of habitation, due process requires that the trial court instruct the jury on the defense. *See United States ex rel. Means v. Solem*, 646 F.2d 322, 328 (8th Cir. 1980) (self defense and defense of others); *State v. Miller*, 443 A.2d 906, 909 (Conn. 1982) (self defense); *State v. LeBlanc*, 660 P.2d 1142, 1143 (Wash. Ct. App. 1983) (self defense). To hold otherwise would unconstitutionally relieve the State of its burden of "proving beyond a reasonable doubt that the defendant did not act in lawful defense of home when defendant has met his burden of going forward to produce evidence that he did." *Jones*, 299 N.C. at 107, 261 S.E.2d at 5; *State v. Hankerson*, 288 N.C. 632, 643, 220 S.E.2d 575, 584 (1975), *rev'd on other grounds*, 432 U.S. 233, 53 L.Ed.2d 306 (1977); *see Mash*, 323 N.C. at 347, 372 S.E.2d at 537 (unconstitutional to shift burden of persuasion on essential elements of crime to defendant).

Because the trial court's error in this case is of constitutional dimension, we presume that the error prejudiced the defendant. N.C.G.S. § 15A-1443(b) (1988). Therefore, the burden is on the State to prove beyond a reasonable doubt that the error was harmless. *Id.* Although the State does not argue this issue in its brief, our review of the record reveals that the State has not met its burden. The State's evidence of guilt is not overwhelming. *State v. Arnold*, 329 N.C. 128, 140, 404 S.E.2d 822, 830 (1991). Furthermore, that the trial court instructed the jury on self defense does not cure the error for failing to give the required instruction. *Cf. Jones*, 299 N.C. at 107, 261 S.E.2d at 5 (trial court instructed jury on defense of family member not defense of habitation).

Because of our resolution of this issue, we need not address the defendant's remaining assignments of error. The defendant is entitled to a

New trial.

Judges JOHNSON and COZORT concur.