STATE OF NORTH CAROLINA
v.
BARDO GARCIA LUGO
No. COA07-906
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Hilda Burnett-Baker, for the State.
Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.
CALABRIA, Judge.
Bardo Garcia Lugo ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of conspiring to traffic in methamphetamine more than 200 grams but less than 400 grams. We find no error.
The State presented evidence that on 28 July 2005, Kenneth Wood ("informant Wood") pled guilty in federal court to charges involving controlled substances. Informant Wood and his friend, Bill Whiteside ("informant Whiteside") (collectively, "the informants"), began working as confidential informants with law enforcement officers. Informant Whiteside met defendant's brother when they were both incarcerated in the Swain County jail. According to informant Whiteside, defendant's brother told him that defendant could obtain methamphetamine. Officer Brian Leopard of the Macon County Sheriff's Office ("Officer Leopard") began working with the informants in July 2005. The informants made phone contact with defendant in order to arrange the purchase of methamphetamine.
Officer Leopard recorded many of the telephone conversations between the informants and defendant. The informants worked for approximately one month to attempt to arrange a narcotics deal with defendant. In order to arrange the purchase of the methamphetamine, the informants made numerous telephone calls to defendant. The initial discussions concerned four ounces of methamphetamine and five pounds of marijuana. According to Officer Leopard, defendant said he did not have access to that amount of marijuana, and that because defendant knew the informants had $10,000, he "went up a level on the methamphetamine" and offered them eight ounces of methamphetamine.
On 9 August 2005, informant Wood called defendant and arranged for defendant to meet the informants at the local Wal-Mart. Defendant arrived with one of his associates, then left Wal-Mart. When defendant returned to Wal-Mart without his associate, he instructed the informants to drive to an Exxon gas station, look for a white vehicle, and follow the vehicle. When the informants arrived at the gas station, they met two Hispanic men in a white Oldsmobile. The informants followed the Oldsmobile for approximately five miles, until the vehicle stopped in the road. The Hispanic men then asked the informants if they had the correct amount of money to purchase the methamphetamine, and one of the men retrieved a container from behind a road sign.
Subsequently, the police officers intervened and arrested everyone. When the officers searched the Oldsmobile, they did not find any narcotics. One of the informants advised the officers that a brown container containing the methamphetamine was thrown over an embankment. After hearing this information, the officers searched the embankment area and discovered the brown container. The brown container possessed 221.9 grams of methamphetamine hydrochloride. Defendant did not testify.
Defendant was tried for conspiracy to deliver more than 200 but less than 400 grams of methamphetamine. After the jury returned a guilty verdict, the Honorable J. Marlene Hyatt sentenced defendant to a minimum of 90 months to a maximum of 117 months in the North Carolina Department of Correction. Defendant appeals.
On appeal, defendant argues that he is entitled to a new trial since the trial court erred in refusing to instruct the jury on the defense of entrapment. We disagree.
It is well established as to affirmative defenses generally, that "[w]here the defendant's or the State's evidence when viewed in the light most favorable to the defendant discloses facts which are legally sufficient to constitute a defense to the charged crime, the trial court must instruct the jury on the defense." State v. Marshall, 105 N.C. App. 518, 522, 414 S.E.2d 95, 97 (1992). Although the defendant did not present any evidence on his own behalf the trial court must submit the entrapment defense to the jury if "the State's own evidence raises an inference of entrapment. . . ." State v. Neville, 302 N.C. 623, 626, 276 S.E.2d 373, 375 (1981).
The State's evidence, when viewed in the light most favorable to defendant, is not sufficient to require submission of the entrapment defense to the jury. "To establish the defense of entrapment, it must be shown that (1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant." State v. Branham, 153 N.C. App. 91, 99, 569 S.E.2d 24, 29 (2002). Even if we assume that evidence existed sufficient to meet the first prong of the defense, the evidence was not sufficient on the second prong.
The second element ensures that the entrapment defense is unavailable "to a defendant who has a predisposition to commit the crime independent of governmental inducement and influence." State v. Hageman, 307 N.C. 1, 29, 296 S.E.2d 433, 449 (1982). By limiting entrapment to acts of persuasion, trickery or fraud that are "practiced upon one who entertained no prior criminal intent," id. at 28, 296 S.E.2d at 449, the entrapment defense does not hamper law enforcement's use of those temptations and strategems which "merely afford opportunities or facilities for the commission of the offense" by those who were already inclined to commit it. Id. at 30, 296 S.E.2d at 449. In this case, while, as defendant argues, the informants, Wood and Whiteside, made the initial contact with defendant, that is true in almost all "controlled buys" of drugs by police informants. As this Court stressed in State v. Broome, 136 N.C. App. 82, 89, 523 S.E.2d 448, 454 (1999) (quoting State v. Stanley, 288 N.C. 19, 33, 215 S.E.2d 589, 598 (1975)), "Law enforcement `may rightfully furnish to the players of [the drug] trade opportunity to commit the crime in order that they may be apprehended. It is only when a person is induced by the officer to commit a crime which he did not contemplate that we must draw the line.'"
The record in this case contains no evidence that when Wood called defendant, defendant expressed any reluctance in making the drug deal with Whiteside and Wood. See United States v. Gurolla, 333 F.3d 944, 955 (9th Cir. 2003) ("The most important [factor relevant to examining predisposition] is the defendant's reluctance to engage in criminal activity."). In fact, when Whiteside and Wood told defendant that they wanted four ounces of methamphetamine and five pounds of marijuana for $10,000.00, defendant made no objection other than to explain that he could not get the marijuana. Defendant then, however, volunteered to sell them eight ounces of methamphetamine for $ 10,000.00. See State v. Thompson, 141 N.C. App. 698, 707, 543 S.E.2d 160, 166 (2001) (holding that trial court properly refused to give entrapment instruction when it took "little urging" to get defendant to participate in drug deal).
Defendant told Wood that he "could get you this certain amount for this X amount of dollars, letting us know that he definitely had ties to getting it." On cross-examination, defense counsel even asked: "And Mr. Lugo talked real big about what he could do, didn't he?" Wood responded: "Yeah, somewhat."
Defendant points to the numerous phone calls made by the informants to defendant, as well as defendant's failure to respond and the delay in his delivering the drugs. Nothing in the phone conversations, however, indicates a reluctance by defendant to engage in the transaction apart from a desire to take steps to ensure he did not get caught. See Hageman, 307 N.C. at 32, 296 S.E.2d at 451 ("We note at this point that defendant's hesitancy might well have been the exercise of the natural caution that could be expected from one engaged in illegal conduct rather than conduct tending to negate predisposition."). As Wood described it, defendant was "sketching us out as we was him and the third time [they met,] he delivered." Defendant also attributed the delay to problems with his suppliers. According to Wood, when, at one meeting, defendant did not bring the drugs, "he kept saying, . . . he'll make it happen."
Finally, defendant points to Wood's testimony that defendant "was being stubborn. . . . [H]e was acting like he didn't want to do nothing, but he finally did." Defendant equates this stubbornness with a reluctance to engage in the transaction. When, however, defense counsel suggested to Wood that this testimony meant defendant did not want to do what Wood wanted him to do, Wood clarified: "No, he wanted to do it his way." Wood then summarized defendant's position taken with the informants succinctly: "We told him what we needed, and he said he could do it."
In sum, the State's evidence, even when viewed in the light most favorable to defendant, reveals a person who was cautious, was concerned about getting caught, and wanted to do things his way. The evidence presented "amounts to no more than `providing opportunity,'" Broome, 136 N.C. App. at 89, 523 S.E.2d at 454  an opportunity that all the evidence indicates defendant was willing to pursue so long as his suppliers cooperated, and he could limit his risk of being arrested. As a result, the trial court did not err in refusing to instruct the jury on the entrapment defense.
Defendant also argues that his trial counsel provided him with ineffective assistance of counsel by relying on a defense for which he did not present adequate evidence. We are precluded from addressing the merits of this issue as the record before us does not contain all the information necessary to resolve this claim.
The United States Supreme Court has held that ineffective assistance of counsel ("IAC") claims should rarely be raised on direct appeal because:
When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. . . . The evidence introduced at trial . . . will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the Strickland analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it.The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. . . . The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. . . . Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

Massaro v. United States, 538 U.S. 500, 504-05, 155 L. Ed. 2d 714, 720-21 (2003). Since defendant's claim is based on the Sixth Amendment to the federal Constitution, Massaro is binding on state courts.
Nevertheless, our Supreme Court, in a decision prior to Massaro, held that IAC claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required. . . ." State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). If, however, "the reviewing court determine[s] that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief] proceeding." Id. at 167, 557 S.E.2d at 525.
In this case we cannot resolve defendant's IAC claim without knowing whether defense counsel had a strategic reason in not presenting evidence on defendant's behalf rather than relying solely on the State's evidence. Indeed, the record does not reveal what evidence could have been presented and the risks, if any, or strengths of such evidence. We, therefore, conclude that defendant's IAC claim cannot be decided on the existing record and dismiss this assignment of error without prejudice to defendant's right to reassert his claims in a motion for appropriate relief.
Affirmed in part, dismissed in part.
Chief Judge MARTIN and Judge GEER concur.
Report per Rule 30(e).