1998 OK CR 39

Larry Kenneth JACKSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–95–1429.

Court of Criminal Appeals of Oklahoma.

June 30, 1998.

Rehearing Denied Aug. 11, 1998.

Barry Albert, Gina Walker, Assistant Public Defenders, Oklahoma City, for Defendant at trial.

Robert H. Macy, District Attorney, Ray Elliott, Stephen Deutsch, Assistant District Attorneys, Oklahoma City, for the State at trail.

Wendell B. Sutton, Assistant Public Defender, Oklahoma City, for Jackson on appeal.

Susan B. Loving, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

PER CURIAM:

¶1 Appellant, Larry Kenneth Jackson, was charged with first degree malice murder in violation of 21 O.S.1991, § 701.7, in the District Court of Oklahoma County, Case No. CF-94-6070. The State filed a Bill of Particulars alleging three aggravating circumstances. A jury trial was held before the Honorable Daniel L. Owens, District Judge. The jury found Jackson guilty of first degree murder and found the existence of two aggravating circumstances that the murder was especially heinous, atrocious, or cruel and that Jackson was previously convicted of a felony involving the use or threat of violence to the person.[1] Jackson was sentenced to death. From this Judgment and Sentence Jackson has perfected his appeal.

## I. FACTS

¶2 Jackson and Wendy Cade had an ongoing relationship while Jackson was incarcerated at Joseph Harp Correctional Institution. Jackson believed that they would be married when he was released from prison. Cade was engaged to Victor Dizer and was attempting to change the relationship she had with Jackson.

¶3 Jackson was assigned on a work detail installing furniture for Oklahoma State Industries at the Jim Thorpe building in Oklahoma City. Cade went to the Jim Thorpe building where Jackson was working on September 6, 1994. They left together in Cade's Jeep Cherokee at about 10:00 a.m. According to Jackson, they were arguing about their relationship. Jackson left with the tools he was using, which included a utility knife.[2] Shortly thereafter, Jackson was discovered missing and the Department of Corrections placed Jackson on escape status.

¶4 Jackson and Cade first stopped at a convenience store at 23rd and Broadway where Jackson purchased a quart of beer and cigarettes. Jackson said that Cade went across the street to a liquor store and bought a "fifth" of some type of alcoholic beverage. They then drove to Martha Gulley's house (Cade's mother) where Cade dropped off her 4 year old daughter.

¶5 After that, they drove around for some time north of the Oklahoma City metropolitan area. Around noon they stopped and bought chicken at a Kentucky Fried Chicken restaurant. They then went to a Motel 6 at N.E. 122nd and I-35.

¶6 At the motel, they checked into a room, ate their chicken and had intercourse. After that, according to Jackson they began fighting and he "blimped" out due to being either intoxicated or angry. Jackson left the motel in Cade's Jeep and got as far as the entrance ramp to the Turner Turnpike, just north of 122nd and I-35, where he had an accident, disabling the Jeep. Later that day, at about 3:30 p.m., the Jeep was found by a highway patrol trooper.

¶7 Jackson next remembered waking up in a field. Jackson hitched a ride to the Ambassador Court apartments at 1634 South Phillips where he believed his sister worked. Arriving there at about 6:00 to 6:30 p.m., he was unable to find his sister, but he did find a woman, Dorothy Leffette, who allowed him to stay at her apartment.

¶8 On September 7, 1994, at around 9:00 a.m. Victor Dizer and Martha Gulley, Cade's fiance and mother, went to the area where the Jeep was found in order to search for Cade. They went to the Motel 6 at N.E. 122

---

1. The State also alleged that Jackson posed a continuing threat.

2. A knife that uses disposable razor sharp blades, also called a box knife.

and I–35 and learned that Cade had rented a room. The police were notified and upon checking the room, they found Cade's nude body lying against the bed. Cade's throat had been slashed and the entire bathroom floor was covered with blood; however, very little blood was on Cade's body. Cade had over thirty slash/stab wounds. Cause of death was determined to be the deep incised wound to her throat which severed both jugular veins. The utility knife, wrapped in a wash cloth, was found stuck between the mattress and box springs of the bed.

¶ 9 Jackson was located by police at Leffette's apartment at about noon on September 7, 1994. He was taken into custody. In the room where Jackson was arrested the police found Cade's jewelry, watch, and keys to the Jeep. Jackson admitted to police that if Cade was dead, he did it, but he did not want to talk about the details of the killing.

## II. JURY SELECTION ISSUES

¶ 10 Jackson contends in proposition one that the trial court erred by prohibiting counsel from conducting voir dire on his defense theory of diminished mental capacity. Jackson also complains that it was error for the trial court to prohibit counsel from inquiring about the juror's perception of a "life sentence."

¶ 11 Jackson claims, first, that he was denied his right to effective voir dire by being prohibited from inquiring about potential juror's feelings toward a defense of diminished capacity based on drug or alcohol consumption. The manner and extent of voir dire rests within the sound discretion of the trial court. *Plantz v. State*, 1994 OK CR 33, ¶ 24, 876 P.2d 268, 277, cert. denied, 513 U.S. 1163, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995).

> "The principles governing the sufficiency of voir dire questions derive from the Sixth Amendment guarantee of an impartial jury in criminal prosecutions." "The purpose of voir dire . . . is to ascertain whether there are grounds to challenge for either actual or implied bias [and] to permit the intelligent exercise of preemptory [sic] challenges." As long as the examination of

prospective jurors is sufficiently broad to afford a defendant a jury not affected by outside influences, personal interests or bias, a judge's decision to limit questioning will not be ruled an abuse of discretion. Voir dire rulings lay within the trial judge's discretion because the "determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." *Walker v. State*, 1994 OK CR 66, ¶ 12, 887 P.2d 301, 307, *cert. denied*, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995)(alterations in original) (citations omitted). We are not interested in whether or not a certain question was allowed to be asked, but rather whether the defendant was allowed sufficient voir dire to determine if there were grounds to challenge a particular juror for cause and to intelligently exercise his preemptory challenges.

¶ 12 In *Nauni v. State*, 1983 OK CR 136, ¶ 9, 670 P.2d 126, 130, we held that no abuse of discretion occurred when the judge restricted voir dire questioning regarding legal issues the trial court had to instruct the jury upon. In this case, the trial court did not abuse its discretion in disallowing Jackson's questions regarding his theory of defense. The questions were an effort to test jurors' willingness to accept his theory of defense rather than to test their impartiality. Ultimately, instructions on voluntary intoxication were not given. Therefore, defense counsel's proposed questions would only have confused the jury.

¶ 13 In answer to Jackson's second allegation, there was no error in not allowing defense counsel to probe jurors regarding their perception of a "life sentence." We have never held that the jury should be told about the inner workings of the parole system, nor have we held that jurors should be informed about the length of life sentences versus sentences of life without the possibility of parole. *Johnson v. State*, 1996 OK CR 36, ¶¶ 45–49, 928 P.2d 309, 319–20, *cert. denied*, —— U.S. ——, 118 S.Ct. 99, 139 L.Ed.2d 54 (1997). We hold that the meaning of a life sentence and a sentence of life without parole is not a proper subject for voir dire.

■ ¶ 14 In proposition two, Jackson claims that his rights were violated by the removal of prospective juror Stempf. Juror Stempf admitted that about twelve years prior to this trial he had been convicted, in a Wyoming federal court, of illegally carrying a firearm on an Air Force base. Stempf agreed that it was a felony conviction and that the sentence had already expired. The trial court excused Mr. Stempf based on his felony conviction over the objection of Jackson.

¶ 15 Jackson argues that because Stempf had completed his sentence, his civil rights were restored and he was eligible to serve on this jury. Persons who are not qualified to serve as jurors are:

Persons who have been convicted of any felony or who have served a term of imprisonment in any penitentiary, state or federal, for the commission of a felony; provided, any such citizen convicted, who has been *fully restored* to his or her civil rights, shall be eligible to serve as a juror;

. . .

38 O.S.Supp.1995, § 28(B)(6) [emphasis added]. This section needs no interpretation. The clear intent of the legislature is to exclude those who have either been convicted of any felony or have served a term of imprisonment in any penitentiary for the commission of a felony unless that person has been fully restored to his or her civil rights.

¶ 16 Jackson argues that a person's civil rights are fully restored after the term of imprisonment has expired. In support of this argument, Jackson cites 26 O.S.1991, § 4–101, which suspends voting rights only for a period of time equal to the time prescribed in the judgment and sentence. Further, Jackson cites 21 O.S.1991, § 65, which states that "[a] sentence of imprisonment under the Department of Corrections suspends all the civil rights of the person so sentenced, ... during the term of such imprisonment."

■ ¶ 17 We need not discuss the issue of whether a person's civil rights, including the right to serve on a jury, are restored upon the termination of a sentence. While juror Stempf may be eligible to serve as a juror in Oklahoma, 22 O.S.1991, § 658, states that a person who has been convicted of a felony is subject to being excused for cause, with no mention of the status of his civil rights. The decision to excuse a prospective juror for cause rests within the sound discretion of the trial judge, whose decision will not be overturned unless an abuse of discretion is shown. *Spears v. State*, 1995 OK CR 36, ¶ 9, 900 P.2d 431, 437, *cert. denied,* 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527.

¶ 18 The trial court had sufficient information to determine whether Stempf's conviction was a felony. Therefore, we need not determine whether the conviction was or was not a felony under Oklahoma law. Juror Stempf was subject to being challenged for cause pursuant to section 658. Therefore, the trial court did not err in removing him.

¶ 19 Petitioner claims, in proposition three, that the trial court erred when it removed two prospective jurors for cause before adequately establishing that they could not follow the law. Prospective jurors Williams and Hall indicated that they would have trouble imposing the death penalty.

■ ¶ 20 Williams was removed *sua sponte* by the trial court. Her removal was not met with a contemporaneous objection. Therefore, we will review her removal for plain error only. *Lawson v. State*, 1987 OK CR 140, ¶ 13, 739 P.2d 1006, 1008. Williams indicated that regardless of the law and the facts, she could not impose the penalty of death. Therefore, her removal was proper.

■ ¶ 21 Hall first indicated that he could not give meaningful consideration to the penalty of death. Then he said that if it was "beyond a doubt," he could inflict the death penalty, and that, if the State proves its case, he would consider each of the ranges of punishment. Later, when the trial court tried to clarify Hall's position, Hall stated that, "I couldn't prescribe death to him because I just don't want to be the one to put someone to death." Finally, when asked, "Could you vote to impose the death penalty, based upon the facts and evidence you hear and see in this case, if you believe the circumstances warrants the imposition of that

punishment? Could you do that?," Hall stated, "I don't think so."

Responses such as "I don't think I could" consider all three available punishment options, that the juror "could not consider" the death penalty, and that "it would be impossible" for the juror to consider the death penalty indicate these potential jurors could not put aside their personal beliefs in deference to the law and their oath as jurors. Therefore, they were properly excused for cause.

*Carter v. State,* 1994 OK CR 49, ¶ 22, 879 P.2d 1234, 1245, *cert. denied,* 513 U.S. 1172, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995)[citations omitted]. We held in *Davis v. State,* 1983 OK CR 57, ¶ 20, 665 P.2d 1186, 1194, *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177, that we must look at the entirety of the juror's voir dire examination to determine if the trial court properly excused the jurors for cause. In *Davis,* jurors who were ambiguous, hesitant and equivocal in responding to questions concerning the death penalty were found to be properly excluded for cause. Hall was likewise hesitant and equivocal; therefore, he was properly excluded for cause.

 ¶ 22 In proposition fourteen, Jackson argues that the prosecutor committed misconduct during voir dire. First Jackson claims as error the prosecutor's attempt to distinguish between malice aforethought and premeditation during voir dire. We find that the prosecutor's remarks were not so egregious as to constitute reversible error. *See Byrne v. State,* 1971 OK CR 100, ¶ 3, 482 P.2d 620, 621. Next Jackson claims that the prosecutor improperly defined reasonable doubt during voir dire. The prosecutor's remarks that beyond a reasonable doubt did not mean beyond all doubt did not create an erroneous impression. *Diaz v. State,* 1986 OK CR 167, ¶¶ 18–19, 728 P.2d 503, 511. Therefore, no error occurred.

 ¶ 23 In part of proposition thirteen, Jackson urges us to reconsider our position regarding the statute which allows potential jurors over seventy years of age to opt out of jury service. We continue to hold that the statute is valid and does not violate a defendant's rights. *Bryson v. State,* 1994 OK CR 32, ¶¶ 17–18, 876 P.2d 240, 251, *cert. denied,* 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995)

## III. FIRST STAGE ISSUES

 ¶ 24 In proposition five, Jackson argues that the State presented insufficient evidence of malice aforethought, because there was sufficient evidence to raise a reasonable doubt that Jackson was so intoxicated and/or in the heat of passion as to be incapable of forming a specific intent to kill. While there was evidence that Jackson may have been intoxicated or may have been arguing with Cade at the time of the killing, there was also evidence that Jackson acted with malice aforethought. State of mind is generally proved circumstantially. The fact that Cade's throat was cut from "ear to ear" with a razor knife is sufficient enough to show that the attacker intended death. Malice aforethought requires nothing more than the deliberate intention to take the life of another without justification. *Huckaby v. State,* 1990 OK CR 84, ¶¶ 22–27, 804 P.2d 447, 452. This intent may be "formed instantly before committing the act by which it is carried into execution." 21 O.S.1991, § 703.

 ¶ 25 "Although there may be conflict in the testimony, if there is competent evidence to support the jury's finding, this Court will not disturb the verdict on appeal." *Cheney v. State,* 1995 OK CR 72, ¶ 44, 909 P.2d 74, 86, *quoting, Woodruff v. State,* 1993 OK CR 7, ¶ 30, 846 P.2d 1124, 1134, *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313. It is quite possible that the jury chose to disbelieve Jackson's testimony that he drank as much as he did, especially in light of the fact that Jackson changed his story to include the fact that he drank an additional "fifth" of alcohol before the killing.

The test for sufficiency of evidence where all of the evidence is circumstantial is whether the State's evidence tends to exclude every reasonable hypothesis other than guilt. However, the circumstantial evidence need not exclude every possibility other than guilt. When implementing this

standard, the evidence and its inferences must be considered in a light most favorable to the State, and the determination will be based on whether the rational trier of fact could have found guilt. *Duckett v. State,* 1995 OK CR 61, ¶ 37, 919 P.2d 7, 18, *cert. denied,* — U.S. —, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997). Based on the facts in this case, sufficient circumstantial evidence was presented to support the jury's conclusion that Jackson killed Cade with malice aforethought. We find no merit in this proposition.

¶ 26 In proposition six, Jackson claims that reversible error occurred when the State called witness Roy Wilkenson who answered several preliminary questions, but when asked about an incident which occurred between Jackson and Wendy Cade at the visitation area of Joseph Harp Correctional Center, Wilkenson refused to answer by saying, "I can't do that. I've got to go back there." Jackson argues that Wilkenson was invoking his Fifth Amendment right to remain silent. Reversible error occurs when a witness claims the Fifth Amendment privilege in front of a jury "where trial counsel objects and the State makes a conscious and flagrant attempt to build its case from inferences arising from the witness's invoking the Fifth, or that the witness's refusal to answer questions added critical weight to the State's case in a form not subject to cross-examination." *Johnson v. State,* 1995 OK CR 43, ¶ 11, 905 P.2d 818, 822.

¶ 27 However, in this case, Wilkenson did not invoke a valid privilege as the trial court duly noted. The right to remain silent found in the Fifth Amendment to the United States Constitution and in Article II, Section 21 of the Oklahoma Constitution protects persons from being compelled to give evidence against themselves. *Skelly v. State,* 1994 OK CR 55, ¶ 29, 880 P.2d 401, 407. There is nothing in the record to indicate that Wilkenson was being asked to give testimony which would have incriminated himself. Nor can Wilkenson's refusal to testify be based on any of the statutory privileges. *See* 12 O.S. 1991, § 2501, *et seq.*

¶ 28 Whether or not Wilkenson has invoked a valid privilege does not lessen the impact of his refusal to testify upon the jury. "In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of *claims of privilege* without the knowledge of the jury." 12 O.S.1991, § 2513(B) (emphasis added). Regardless of the validity of the claim of privilege, the law requires that the claim be asserted outside the jury's presence, "to the extent practicable." *Id.*

¶ 29 In this case, the State admitted that Wilkenson told them that he would have selective memory, but the State did not know he would flatly refuse to testify. As soon as Wilkenson refused to answer, a bench conference was held where Jackson objected and moved for a mistrial.

¶ 30 Wilkenson was taken back to the judge's chambers where a lengthy conference was held regarding whether the State knew Wilkenson would refuse to testify. During this conference, the State decided that it would not call Wilkenson back to the stand. After the conference was over the trial court instructed the jury to disregard Wilkenson's testimony and not to speculate about what he may have testified about. The trial court acted properly under the circumstances and properly followed 12 O.S.1991, § 2513. There was no error here.

¶ 31 In proposition seven, Jackson argues, in eight sub-propositions, that inadmissible evidence was introduced over objection during the first and second stages. We will address the evidence introduced during the first stage here. Jackson first re-urges and incorporates by reference, in his first sub-proposition, his trial motions that two video taped interviews, one with Oklahoma City Police detectives and one with a Department of Corrections investigator, were inadmissible for four separate reasons: he did not knowingly and voluntarily waive his rights; a proper probable cause hearing was not held within forty-eight hours; the Department of Corrections waiver form was inadequate; and the statements were otherwise inadmissible because the discovery code does not allow their admission.

¶ 32 At trial, during an in camera hearing, Jackson objected to the tape because the

Discovery Code does not allow for the admission of video tapes. When the State sought to introduce the video taped interview between Jackson and Oklahoma City Police detectives, Jackson made a general objection to the tape and moved for suppression of Jackson's statement based on earlier arguments. Jackson was apparently referring to his pre-trial motion to suppress, citing only general authority and the hearings on the motion.

¶ 33 First, a *Jackson v. Denno* [3] hearing was held wherein the trial court made a determination that both statements were made knowingly and voluntarily. Jackson, neither at trial nor on appeal, cites any authority to show that the trial courts' decision was in error.

¶ 34 Second, the trial court denied Jackson's motion to have the statements suppressed, because a probable cause hearing was not held within forty-eight hours. The first video taped interview was taken within forty-eight hours of Jackson's arrest. A probable cause determination was made by the Honorable Russell Hall, Special Judge for Oklahoma County, at 1:00 p.m. the day following Jackson's arrest, well within the dictates of *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). No error occurred here.

¶ 35 Third, the trial court made a determination that the waiver form produced by the Department of Corrections investigator which was signed by Jackson prior to the interview complied with the mandates of *Miranda v. Arizona.* [4] *Miranda* requires that a person undergoing custodial interrogation "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.,* 384 U.S. at 479, 86 S.Ct. at 1630. Jackson has cited no authority, nor have we found any authority to support the notion that the form used does not satisfy the dic-

tates of *Miranda,* for which "no talismanic incantation [is] required to satisfy its strictures." *Duckworth v. Eagan,* 492 U.S. 195, 203, 109 S.Ct. 2875, 2880, 106 L.Ed.2d 166 (1989), *quoting California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981) (per curiam).

¶ 36 Fourth, and most interesting, was trial counsel's claim that the Oklahoma Discovery Code does not allow the introduction of recorded statements made by the accused. 22 O.S.Supp.1996, § 2002(B)(2), states that "[a] statement *filed* under subparagraph a, b, or c of paragraph 1 of subsection A or B of this section is not admissible in evidence at trial." (emphasis added). Section 2002(A)(1) states that "[u]pon request of the defense, the State shall be required to disclose the following: ... (c) any written or recorded statements and the substance of any oral statements made by the accused or made by a codefendant, ..." Statements of an accused offered against him are admissible as non-hearsay pursuant to 12 O.S.1991, § 2801(4)(b) as long as the taking of the statement complies with procedural safeguards.

▮ ¶ 37 We interpret the language of the Discovery Code to say that statements not otherwise admissible will not be made admissible under the Code. For example, a witnesses' sworn statement will not be admissible merely because it is filed under the Discovery Code.

▮ ¶ 38 The Discovery Code does not supplant the rules of evidence found in Oklahoma's Evidence Code or other relevant statutory authority allowing for the admission of evidence. If the statements are otherwise admissible under a specific rule of law other than being merely "filed" with the district court under the discovery code, the statements are admissible.

▮ ¶ 39 In reaching this conclusion we note that statutes are to be construed to determine, if possible, the intent of the legislature, reconciling provisions, rendering them consistent and giving intelligent effect to each. *Lozoya v. State,* 1996 OK CR 55, ¶ 17,

---

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

4. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

932 P.2d 22, 28. The intent of the legislature in including the wording making certain items inadmissible was not intended to keep otherwise admissible items from being admitted, but was obviously meant to limit admissibility to those items already admissible under other statutes. This language was used to promote full and fair disclosure through discovery by relieving the fear of having otherwise non-admissible statements being introduced at trial.

¶ 40 Under this sub-proposition, Jackson also "reargues the requests for redaction [of the tapes] which were overruled at trial." Jackson refers to a portion of the tape where he confirms that he purchased crack cocaine after killing Cade. Trial counsel did not object to the redacted tape on the grounds that it contained "other crimes evidence." Counsel merely objected first, by motion, that the tape was inadmissible for the reasons stated above and more specifically that the discovery code did not allow for admission. We shall discuss the introduction of the "other crimes evidence" below as it is Jackson's second sub-proposition in proposition seven.

■ ¶ 41 Jackson argues evidence regarding his purchase of cocaine was improperly admitted as "other crimes evidence" and the State failed to give notice of the intended use of this information at trial as required by *Burks v. State*, 1979 OK CR 10, ¶ 11–19, 594 P.2d 771, 774–75; *overruled in part on other grounds, Jones v. State*, 1989 OK CR 7, ¶ 8, 772 P.2d 922, 925. Dorothy Leffette testified that Mr. Jackson twice purchased cocaine during the evening of September 6. After this testimony was elicited, trial counsel moved for a mistrial, which was overruled. This evidence was also included on Jackson's video taped interview with police, as mentioned above.

¶ 42 The State argues that the evidence of cocaine purchases was part of the *res gestae* of the murder. The State cites *Neill v. State*, 1994 OK CR 69, 896 P.2d 537, *cert. denied*, 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996), where this Court held that

> evidence of other crimes may be admissible where they form a part of an "entire transaction" or where there is a "logical

connection" with the offenses charged. *Dunagan v. State*, 734 P.2d 291, 294 (Okl. Cr.1987); *Bruner v. State*, 612 P.2d 1375 (Okl.Cr.1980). This "res gestae" exception differs from the other listed exceptions to the evidence rule; in that in the listed exceptions, the other offense is intentionally proven, while in the res gestae exception, the other offense incidentally emerges. *Dunagan v. State*, 755 P.2d 102, 104 (Okl.Cr.1988). "Evidence of another crime will not be excluded where, as here, it incidentally emerges as events are revealed in their natural sequence." *Shelton v. State*, 793 P.2d 866, 871 (Okl.Cr.1990).

*Neill*, 1994 OK CR 69, ¶ 36, 896 P.2d at 550–51. However, the defendants in *Neill* used marked money obtained during a robbery to partake in a spending spree, including the purchase of cocaine, which led to their arrest. In *Neill*, evidence of the events occurring during the spending spree "were so closely related to the bank robbery and murders that they formed a logical connection with the charged offenses so as to be relevant evidence." *Neill*, 1994 OK CR 69, ¶ 37, 896 P.2d at 551. Furthermore, in *Neill*, the State included this evidence in its pre-trial Notice of Evidence of Other Crimes and the evidence was relevant to connect the defendants with the charged crimes.

■ ¶ 43 The evidence of Jackson's cocaine purchases, in this case, have no relevance to proving that Jackson murdered Wendy Cade. We are not persuaded that evidence of Jackson's cocaine purchases was necessary to the jury's understanding of the sequence of events. What Jackson did with the money is irrelevant to the crimes charged. The State admits that this evidence was somewhat prejudicial. However, given the evidence presented against Jackson and his admissions to the police wherein he stated "I'm guilty. I don't want to go through the details" and "If she's dead, I did it," we are persuaded that the evidence of crack cocaine activity did not play a part in the guilty verdict nor did it play a part in the penalty of death. *Cf. Rogers v. State*, 1995 OK CR 8, ¶ 21, 890 P.2d 959, 971, *cert. denied*, 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215.

¶ 44 In the third sub-proposition, Jackson claims that Cade's personal property seized from the apartment where Jackson was arrested should have been suppressed and that the introduction of this evidence was error. Jackson claims that the police had no authority to seize these items without first obtaining a search warrant.

¶ 45 The police obtained consent to search the apartment from the resident of the apartment, Dorothy Leffette. There is sufficient evidence to show that Leffette had the authority to consent to a search of the entire apartment, including the portion where Jackson had slept. She had, at the least, joint control over that part of the apartment where Jackson spent the night.

> The United States Supreme Court. held that when the prosecution seeks to justify a warrantless search by proving consent, it is not limited to showing consent was given by the defendant; instead, it may show that consent was obtained from a third party who possessed common authority over, or sufficient relationship to, the premises or property to be searched. Mutual use of property, or joint access or control of property, was held to be generally sufficient. The burden rests upon the prosecution to prove adequate authority by a preponderance of the evidence in third party consent cases. See [United States v.] Matlock, 415 U.S. [164] at 177–78, 94 S.Ct. [988] at 996–97, [39 L.Ed.2d 242 (1974)]. Even if the consenting party does not in fact possess actual authority to consent, a warrantless search may be justified when the authorities have reason to believe the consenting party has apparent authority.

Reeves v. State, 1991 OK CR 101, ¶ 39, 818 P.2d 495, 503.

¶ 46 Jackson's reliance on Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), is not persuasive. Minnesota v. Olson stands for the proposition that an overnight guest has a legitimate expectation of privacy in his host's home. Id., 495 U.S. at 98, 110 S.Ct at 1689. The officers in Olson had no permission to enter the residence, either by consent or by warrant. We find that Leffette had the authority to consent to a search of the entire apartment; therefore, the seizure of the items was authorized.

¶ 47 Next, in the fifth sub-proposition, Jackson claims that he was prejudiced by the jury's exposure to inadmissible hearsay. Witness Randy Grady, a Department of Corrections investigator, testified that other inmates told him that Jackson had been tearing up Cade's letters prior to the murder. This testimony was followed by an objection which was sustained by the trial court and the witness was admonished.

¶ 48 Apparently during Grady's interview of Jackson, he asked Jackson if it was true that he had torn up some letters that Cade had sent him. Jackson responded that he had been tearing her stuff up for quite some time. The prosecutor, during cross-examination of Grady was trying to elicit this testimony and was successful with the next question. The questioning surrounding this hearsay was as follows:

Q. [referring to the interview of Jackson] Now at one point when you're talking about his relationship with Ms. Cade, ... you asked him that—something about, wasn't it true that he had torn up some letters belonging to him that Ms. Cade had sent him. Do you remember that?

A. The other inmates I talked to told me he had been tearing her letters up.

MR. ALBERT: Judge, I object to hearsay.

THE COURT: Sustained. You know better than that, Agent.

Q. In fact, he corrected you and told you that he had been tearing her stuff up for quite some time, hadn't he?

A. Yes, Sir.

¶ 49 In view of the fact that the objection was sustained and no request was made to have the jury admonished and no motion for a mistrial or other relief was made, reversal is not required. Shepard v. State, 1988 OK CR 97, ¶ 7, 756 P.2d 597, 600.

¶ 50 Jackson claims in his sixth sub-proposition that a lay witness was improperly allowed to give her opinion as to whether Cade would have purchased alcohol-

ic beverages for Jackson. The questioning leading to the objection centered around Cade's use of alcoholic beverages and whether she would have consumed alcoholic beverages or would have allowed them to be consumed by anyone in her presence on the day of her death. No objection was made to these questions.

¶ 51 This questioning was clearly an effort to show whether Cade acted in conformance to her character on the day of her death. Such evidence is inadmissible pursuant to 12 O.S.1991, § 2404. However, Jackson made it clear, during opening statement, that he intended to present evidence that Cade purchased a bottle of an alcoholic beverage for him to consume. Jackson has not shown how this testimony caused him harm. Jackson bears the burden of showing that he was "prejudiced in his substantial rights by the error." *Smith v. State,* 1982 OK CR 89, ¶ 6, 656 P.2d 277, 284. Jackson has failed to show that he was prejudiced by the testimony; therefore, we find any error harmless.

¶ 52 Jackson argues, in a portion of proposition eight, that the trial court erred in refusing to allow the introduction of Defendant's Exhibit 1, a bottle of Alize liquor. Jackson asserted that this bottle was similar to a bottle of alcohol that was purchased by Cade, which he drank prior to Cade's death. The jury was able to view this bottle as it was being examined by both Jackson and Dr. Donica. Jackson has failed to supply any authority to show that the failure to introduce this bottle into evidence was error. Therefore, the alleged error is not properly before this Court. *Wolfenbarger v. State,* 1985 OK CR 143, ¶ 6, 710 P.2d 114, 116, *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986).

¶ 53 Jackson complains in proposition fourteen that the prosecutor committed misconduct during the first stage closing argument. First, Jackson claims that the prosecutor attempted to persuade the jury from following the law of manslaughter and to hold Jackson accountable by finding him guilty of first degree murder. We find that these arguments were based on the law and did not overstep the bounds of argument

allowed during closing. *Brown v. State,* 1988 OK CR 49, ¶ 12, 751 P.2d 1078, 1080.

■ ¶ 54 Jackson next claims that the prosecutor relied on impermissible hearsay and other evidence not supported by the record. The prosecutor referred to the statements that Jackson had been tearing up Cade's letters for some time and remarked that no blood or evidence of a struggle was found in the Jeep. The prosecutor also stated that Cade's daughter, who was in the back of the Jeep before being taken to Cade's mother's house, never said that Jackson or Cade were yelling and arguing. The prosecutor also stated that Jackson left the box knife in the Jeep when he and Cade went into the motel room. Jackson also complains that the prosecutor improperly elicited sympathy for Cade by referring to her as a young mother who was trying to get her life straight and turn toward Christ and by repeatedly referring to the more than thirty cuts sustained by Cade. None of these comments were met with timely objections. Therefore, we review for plain error only. *Freeman v. State,* 1994 OK CR 40, ¶ 15, 876 P.2d 283, 287, *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503. Upon review of the record we find that these comments did not rise to the level of plain error.

■ ¶ 55 Next, Jackson argues that it was error for the prosecutor to ask the jury to speculate on what Mr. Jackson was thinking when he had to leave the bathroom and go get the knife. The evidence supported the inference that Jackson had to retrieve the knife from either his pants or the Jeep. This comment was reasonably supported by the evidence. Jackson next claims that the prosecutor gave his opinion that Jackson was guilty of murder and not manslaughter. None of the comments now complained of were objected to at trial; therefore, all but plain error is waived. These comments did not raise to the level of plain error.

¶ 56 Jackson next argues that the prosecutor improperly misstated facts when he cross-examined Jackson. These statements were minor and did not affect the outcome of the trial; therefore, there was no prejudice. *Charm v. State,* 1996 OK CR 40, ¶ 60, 924

P.2d 754, 770, *cert. denied,* —— U.S. ——, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997).

## IV. FIRST STAGE INSTRUCTION ISSUES

¶ 57 In proposition eight, Jackson argues that the trial court committed error by failing to give his requested instructions on second degree (depraved mind) murder, first degree manslaughter, and voluntary and involuntary intoxication.

¶ 58 Jackson argues that the trial court should have given his requested instructions on "lesser included" homicide offenses. Jackson first errs in calling other homicidal crimes "lesser included offenses" of first degree malice murder. Jackson cites *Gann v. State,* 1964 OK CR 122, 397 P.2d 686, for the proposition that a trial court has a duty to instruct on all lesser included offenses of murder. *Gann* was a prosecution for assault and battery with a dangerous weapon which has the lesser included offense of simple assault and battery.

¶ 59 In this case, Jackson claimed that he was either too drunk or too angry to have an intent to kill. Jackson argues that the jury should have been instructed on second degree depraved mind murder. However, in *Willingham v. State,* 1997 OK CR 62, ¶ 28, 947 P.2d 1074, 1081–82, we stated "second degree depraved mind murder is not a lesser included offense of first degree malice murder." Therefore, instructions on this offense were not required.

¶ 60 Jackson next claims that the trial court should have given instructions on second degree felony murder with the underlying felony being escape from a penal institution. The facts indicate that Jackson had completed the crime of escape from a penal institution long before the homicide occurred. Therefore, instructions on this offense were not warranted.

¶ 61 Next, Jackson claims that he was entitled to instructions on first degree "dangerous weapon" manslaughter. The trial court did give an instruction as Instruction 24, which included a reference to "dangerous weapon" in the manslaughter context. The instruction could have been clearer. However, we decline to grant relief on this proposition.

¶ 62 Jackson next attacks the trial courts' failure to give the requested instructions on voluntary intoxication. After a defense is presented the trial court has the duty to determine whether it is adequately raised to warrant instruction, and if so, the finder of fact then must determine whether the defense is worthy of belief. *Spunaugle v. State,* 1997 OK CR 47, ¶ 28, 946 P.2d 246, 251–52.

¶ 63 Our most recent cases have set forth a stringent guideline for the giving of voluntary intoxication instructions. *See Valdez v. State,* 1995 OK CR 18, ¶¶ 57–58, 900 P.2d 363, 379, *cert. denied,* 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (to be entitled to an instruction on the defense of voluntary intoxication, Valdez had to present evidence sufficient to raise a reasonable doubt concerning his ability to form the requisite criminal intent). This test, which requires that a defendant introduce sufficient evidence of intoxication to raise reasonable doubt as to his ability to form requisite criminal intent, was first announced in *Norman v. State,* 1982 OK CR 109, ¶¶ 5–6, 648 P.2d 1243, 1245. This rule announced in *Norman* was not supported by then existing authority and contradicted the burden resting on a defendant to show that he was entitled to instructions on other common defenses. *See Lee v. State,* 1981 OK CR 152, ¶ 18, 637 P.2d 879, 884 (It is well-settled that an accused is entitled to an instruction on any theory of defense supported by the evidence, as long as that theory is tenable as a matter of law). Even if the defendant's evidence is discredited, and wholly self serving, the jury must be advised of defendant's theory of defense where there is evidence to support it. *Holt v. State,* 1955 OK CR 2, ¶ 12, 278 P.2d 855, 857.[5]

---

5. Our cases hold that it is the responsibility of the trial judge to determine if the evidence is sufficient to support the defense instruction. *Cf. Kinsey v. State,* 1990 OK CR 64, ¶ 9, 798 P.2d 630, 633. Sufficient in this context simply means that, standing alone, there is *prima facia* evidence of the defense, nothing more.

¶ 64 The test for giving the instructions on voluntary intoxication probably found its basis in language for the defense of insanity.

> When the plea of insanity is interposed, the burden of proof is on the defendant, unless the evidence on the part of the State is sufficient for that purpose, to introduce sufficient evidence to raise in the minds of a jury a reasonable doubt of the defendant's sanity.

*Mott v. State,* 94 Okl.Cr. 145, 232 P.2d 166, 178 (1951). However, even for an insanity instruction, if any evidence of insanity is raised, the trial court must instruct the jury on the defense of insanity. But, unless the jury determines the defendant has presented evidence sufficient to raise a reasonable doubt as to his sanity at the time of the offense, the presumption of sanity prevails. *Brewer v. State,* 1986 OK CR 55, ¶ 17, 718 P.2d 354, 361, *cert. denied,* 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 169.

¶ 65 Because a more stringent test seems to have evolved for the defense of voluntary intoxication, we find it necessary to clarify the test to be used when determining if an instruction on voluntary intoxication should be given. The test used should be no different from the test used on any other defense. When sufficient, *prima facia* evidence is presented which meets the legal criteria for the defense of voluntary intoxication, or any other defense, an instruction should be given.

¶ 66 The evidence of the defense may come from any source and should not be weighed by the trial court. The trial court should leave the weighing of the evidence to the finders of fact, in whose judgment our system of trial by jury is based.

¶ 67 In clarifying this test, we now apply this test to the facts of this case. A defense of voluntary intoxication requires that a defendant, first, be intoxicated and, second, be so utterly intoxicated, that his mental powers are overcome, rendering it impossible for a defendant to form the specific criminal intent or special mental element of the crime. *O.U.J.I. Cr.2d,* 8–36 & 8–39 (1996).

¶ 68 We find that Jackson has failed to present evidence that his mental powers were so overcome through intoxication that he could not form the specific intent to kill. Expert testimony revealed that if a person consumed as much alcohol as Jackson claimed to have consumed, he would be in a stupor with markedly diminished awareness of things going on around him and have diminished ability to focus attention and would have severely impaired motor functioning. However, Jackson's testimony revealed that he did not suffer from these conditions.

¶ 69 Jackson testified that he was aware of things going on around him just before and just after the murder. Jackson told Dr. Donica that he and Cade were physically fighting in the motel room, they interrupted their fighting long enough to make up and have sex, then they began hitting each other again. Jackson said he went into the bathroom to put on his clothes and Cade came in and started hitting him, they both fell to the floor, they both got up, continuing to hit each other, then Cade fell to the floor. He left the bathroom and sat on the bed, when he went back into the bathroom he saw Cade laying on the floor with blood on her. He told Donica that he was frightened so he got his clothes on and left. This testimony belied Jackson's defense that he was so intoxicated he could not form the requisite intent to kill.

¶ 70 Jury instructions are left to the discretion of the trial court. When they fairly and accurately state the applicable law, this Court will not disturb them. *Morris v. State,* 1988 OK CR 298, ¶ 7, 766 P.2d 1388, 1390. We find that Jackson failed to present enough evidence to support the giving of instructions on voluntary intoxication, and we find that the instructions given fairly and accurately stated the applicable law. Therefore, this assignment of error is denied.

¶ 71 Jackson argues, in proposition twelve, that the "deadlocked jury" charge given to the jury during the first stage deliberations violated his constitutional rights to a fair trial and a reliable sentencing procedure. Jackson's counsel decided not to object to the

giving of the "deadlocked jury" or *Allen*[6] charge during the first stage deliberations. Defense counsel intended to object to granting a mistrial and discharging the jury. The trial court gave the *Allen* charge after seven and a half hours of deliberations. About an hour and a half after giving the instruction, the jury returned with a verdict of guilt of first degree murder. Any error in giving the deadlocked jury charge during first stage was waived.

## V. SECOND STAGE ISSUES

¶ 72 In his seventh sub-proposition of proposition seven, Jackson argues that, during the second stage, the introduction of facts relating to his prior convictions for second degree murder and assault and battery with a deadly weapon with intent to kill was irrelevant and prejudicial. Jackson also claims that the investigator testifying about this prior murder did not have personal knowledge of the facts he was testifying about.

¶ 73 First, the evidence was relevant to show that Jackson was a continuing threat to society, as alleged by the State. Because the jury did not find the existence of this aggravator, Jackson's argument is somewhat dubious. Finally, the record discloses that investigator Sellers had sufficient "first hand" knowledge gained through his prior investigation to testify about the wounds to the prior victim and to testify that the evidence was not consistent with Jackson's story that the shooting was accidental. Therefore this proposition is denied.

¶ 74 Jackson argues, in his eighth and final sub-proposition of proposition seven, that he was prejudiced by improper second stage victim impact evidence. Jackson fails to state specifically what testimony he complains about other than to reference the objections overruled at trial. The first objection was to victim impact evidence generally. We have held that victim impact evidence is relevant in a first degree murder prosecution in *Cargle v. State,* 1995 OK CR 77, ¶¶ 67–78, 909 P.2d 806, 825–26, *cert. denied,* — U.S. —— 117 S.Ct. 100, 136 L.Ed.2d 54 (1996).

*See Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Although this case was tried prior to our decision in *Cargle,* we find that the victim impact evidence was properly restricted.

"[V]ictim impact evidence should be restricted to those unique characteristics which define the individual who has died, the contemporaneous and prospective circumstances surrounding that death, and how those circumstances have financially, emotionally, psychologically, and physically impacted on members of the victim's immediate family."

*Cargle,* 1995 OK CR 77, ¶ 74, 909 P.2d at 828. Therefore, there was no error in allowing the victim impact evidence presented.

¶ 75 Jackson also objected to the fact that Gulley began to cry and sob during her testimony. She continued crying for at least two minutes in front of the jury. Emotional outbursts have no place in victim impact testimony. When a victim impact witness succumbs to their emotions, the trial court has a duty to take appropriate action. *Cargle,* 1995 OK CR 77, ¶ 80, 909 P.2d at 829, *citing, Mitchell v. State,* 1994 OK CR 70, ¶ 56, 884 P.2d 1186, 1205, *cert. denied,* 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). Jackson objected to further testimony from Gulley. The trial court allowed Gulley to continue and no more emotional outbursts occurred.

¶ 76 Based on the entire record, we cannot say that the trial court abused his discretion in allowing Gulley to continue testifying. Based on the facts of this case, we have determined that this incident of crying and sobbing did not have an effect on the jury's determination of punishment.

¶ 77 In proposition nine, Jackson argues that the exclusion of certain mitigation evidence was error. Jackson claims that he should have been allowed to introduce evidence that prosecutors had allowed him to plea bargain his prior murder conviction down to a non-intentional degree of murder. Jackson claims that the negligence of the district attorney's office in allowing Jackson

---

**6.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

to enter a plea to a crime which would allow him to be out on a work detail contributed to this crime. Jackson's argument is speculative at best. This evidence has nothing to do with Jackson's character, prior record or any of the circumstances of the offense. *See Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982) (the Eighth and Fourteenth Amendments require that the sentencer not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death). This evidence is not mitigating evidence. It was properly excluded.

■ ¶ 78 Under this proposition, Jackson next argues that he was not allowed to present testimony that, in a structured environment without much contact with females, Jackson's explosive behavior was unlikely to recur. First, we note that the jury did not find that Jackson posed a continuing threat to society; therefore, the specific evidence is moot. Second, Jackson is attempting to narrow "society" to prison society. We have consistently refused to follow this definition and do so now. *Hooker v. State,* 1994 OK CR 75, ¶¶ 45–46, 887 P.2d 1351, 1365, *cert. denied,* 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995).

■ ¶ 79 Jackson complains, in this proposition, that a juror was sleeping during the testimony of second stage defense witness Dr. Nelda M. Ferguson. Juror misconduct must be proven by clear and convincing evidence. *Wofford v. State,* 1972 OK CR 69, ¶ 8, 494 P.2d 672, 675. Jackson has failed to meet this burden. Jackson also argues that the trial court committed error by giving the jurors the first stage instructions during second stage deliberations. Jackson has not cited any authority to support this allegation nor has he shown that he was prejudiced by this action. Therefore, this argument is meritless.

■ ¶ 80 In proposition ten, Jackson complains of errors relating to the aggravating circumstances found by the jury. First, Jackson argues that the evidence was insuffi-

cient to prove the "prior violent felony" aggravating circumstance. When reviewing the sufficiency of the evidence of aggravating circumstances, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt. *Powell v. State,* 1995 OK CR 37, ¶ 82, 906 P.2d 765, 783, *cert. denied,* 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996), *citing Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Jackson, following the guidelines of *Brewer v. State,* 1982 OK CR 128, ¶ 41, 650 P.2d 54, 63, *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983), stipulated that he had previously been convicted of second degree depraved mind murder and assault and battery with a deadly weapon with intent to kill and that these offenses did involve the use or threat of violence to the person. Therefore, this claim is without merit.

■ ¶ 81 Next Jackson claims that there was insufficient evidence of the "heinous, atrocious or cruel" aggravator. To prove this aggravator, the State must present sufficient evidence to prove beyond a reasonable doubt that death was preceded by conscious serious physical abuse or torture or mental torture. The heinous, atrocious or cruel aggravating circumstance is restricted to those murders in which torture or serious physical abuse is present. *Nuckols v. State,* 1991 OK CR 10, ¶ 5–6, 805 P.2d 672, 674, *cert. denied,* 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727; *Stouffer v. State,* 1987 OK CR 166, ¶ 6, 742 P.2d 562, 563, *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988).

■ ¶ 82 Medical Examiner, Dr. Balding testified that Cade suffered thirty cuts to her neck, body and hands. Sufficient evidence was presented from which the jury could have concluded that the cuts occurred before Cade suffered the fatal slash to her throat. The evidence does not show that the other cuts, some of which were described as defensive wounds, were inflicted after the fatal slash which ultimately led to Cade's loss of consciousness and ultimate death. There was sufficient evidence from which a reason-

able jury could have found that Cade was consciously aware that she was being sliced with a razor knife and physically suffered. The multitude of these wounds amounted to serious physical abuse. *See Hooker v. State,* 1994 OK CR 75, ¶¶ 43–44, 887 P.2d at 1364–65. Such evidence was sufficient to support the heinous, atrocious, or cruel aggravating circumstance.

¶ 83 Jackson argues that both of these aggravating circumstances are vague. Regarding the heinous, atrocious or cruel aggravator, "[i]n this jurisdiction it is well settled that the 'heinous, atrocious or cruel' aggravating circumstance is not arbitrary or capricious, and does not run afoul of the Eighth Amendment of the federal constitution." *Johnson v. State,* 1996 OK CR 36, ¶ 28, 928 P.2d at 316. With regard to the "prior violent felony" aggravator, Jackson has cited no authority or made any argument to show how this aggravator is vague. Therefore, this issue is not properly before us. Jackson must cite relevant and specific authority, for, absent plain error, we will not address assertions unsupported by legal authority. *Al–Mosawi v. State,* 1996 OK CR 59, ¶ 21, 929 P.2d 270, 278, *cert. denied,* —— U.S. ——, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997). There is no plain error here.

¶ 84 In proposition eleven, Jackson argues that the evidence in mitigation outweighed the evidence in aggravation. In examining whether the two aggravators presented here outweighed the mitigating factors presented on Jackson's behalf, we examine the record according to the criteria established in *Fisher v. State,* 1987 OK CR 85, ¶ 25, 736 P.2d 1003, 1011, *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988) (this Court will review such evidence only to the extent necessary to determine whether there was sufficient evidence from which a rational sentencer could find that the balance of aggravating and mitigating circumstances warranted a death sentence).

¶ 85 We cannot say from examining the record that the evidence presented in support of the aggravating circumstance was outweighed by the mitigating evidence. We are unable to say that a rational sentencer could not have reached the conclusion that death was the appropriate sentence in this case. We find no error here.

¶ 86 Jackson also complains that the prosecutor committed error during the second stage when he opined that Jackson was a proper candidate for the death penalty; misrepresented defense counsel's argument; argued outside the record; denigrated alternative punishments; referenced inadmissible other crimes evidence; and denigrated expert witness testimony as "*mumbo jumbo.*" There was no objection to the prosecutor's comments regarding the punishment that Jackson should receive. There was no plain error in these statements. The prosecutor's comment that the expert witness testimony was "mumbo jumbo" was cured by an admonishment to the jury. *Miller v. State,* 1988 OK CR 29, ¶ 18, 751 P.2d 733, 739. The other comments were proper comments on the evidence.

## VI. SECOND STAGE INSTRUCTION ISSUES

¶ 87 During the sentencing stage, the jurors requested a copy of the first stage instructions after deliberating about seven and a half hours. These instructions were given to the jury over defense counsel's objection. Jackson asserts that these instructions included the earlier given *Allen* charge.

¶ 88 We have generally held that it is not error to incorporate the first stage instructions into the second stage. Specifically, when the first stage instructions include one instructing the jury not to allow sympathy to enter into the deliberations, there is no error. *Ledbetter v. State,* 1997 OK CR 5, ¶ 67, 933 P.2d 880, 899.

¶ 89 The jury deliberated for almost seven hours after receiving the first stage instructions before they reached a verdict on punishment. Given this fact, we cannot say that the jury was coerced into reaching a verdict. Therefore, there was no error.

¶ 90 Jackson complains that the trial court erred in not sequestering the jury during deliberations. At 11:05 p.m., nine

hours after beginning punishment deliberations, defense counsel requested that the jurors be sequestered. Defense counsel's request as well as his request for a mistrial and imposition of punishment by the court were denied. An hour later, at 12:10 a.m., the trial court convened the jurors and asked if they wanted to continue deliberating or be sequestered at a hotel and resume deliberations the next day. The jurors decided to continue deliberating. At 4:00 a.m., the jurors requested a hotel. Defense counsel again asked that the jury be discharged, but before the jury could be convened, a verdict of death was reached at 4:06 a.m. Under these facts, we do not find that the jury's verdict was coerced nor was it the result of passion or prejudice.

■ ¶ 91 In proposition thirteen, Jackson raises several issues in order to preserve his rights in subsequent state and federal proceedings. First, Jackson claims that the jury should have been informed that its findings regarding mitigating circumstances did not have to be unanimous. This Court has repeatedly rejected this argument and we do so again. *Duckett v. State*, 1995 OK CR 61, ¶ 67, 919 P.2d at 23. Jackson next argues that the instructions given to the jury on the issue of mitigation permitted the jurors to ignore mitigating evidence altogether and seriously diminished the effect of the mitigating evidence presented in this case. Jackson points out that this Court has upheld the same or similar instructions to those given in this case in *Johnson v. State*, 1996 OK CR 36, ¶ 31, 928 P.2d at 317. We decline to reconsider our prior decisions on this issue.

■ ¶ 92 Jackson next argues that the trial court committed error when it failed to instruct the jurors that they could consider a sentence of life and life without parole even though they had found the existence of an aggravating circumstance. Such an instruction is not required and this Court has been consistent in our rejection of this argument. *Ledbetter v. State*, 1997 OK CR 5, ¶¶ 68–71, 933 P.2d at 899–900. We find no error in the omission of this instruction. Jackson next complains that the instruction, OUJI–CR 440, regarding how the jury is to weigh aggravating circumstances against mitigating

evidence, violates due process. Jackson has not convinced us to change our position that this instruction is proper. *Ledbetter*, 1997 OK CR 5, ¶ 68, 933 P.2d at 898.

■ ¶ 93 Jackson complains that the trial court should have given the requested instruction explaining the difference between life and life without parole. The trial court gave the instruction which was approved in *Johnson*, 1996 OK CR 36, ¶ 52, 928 P.2d at 320:

Under the law of the State of Oklahoma, every person found guilty of murder in the first degree shall be punished by death, or imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole.

This instruction is all that should be given to the jury as they should not be confused with the inner working of the parole system.

■ ¶ 94 Jackson urges us to reconsider allowing defendants to present evidence that it costs more to execute someone than it does to incarcerate them. We decline to do so. *Smallwood v. State*, 1995 OK CR 60, ¶ 62, 907 P.2d 217, 233, *cert. denied*, —— U.S. ——, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996). Jackson argues that the jury should have been instructed on the presumption of a life sentence. Again, we find no error in not giving this instruction. *Duckett*, 1995 OK CR 61, ¶ 63, 919 P.2d at 22.

## VII. ISSUES AFFECTING BOTH FIRST AND SECOND STAGE

¶ 95 Jackson complains in his fourth proposition of error that his constitutional rights to due process, a fair trial and a fair and reliable sentencing hearing were violated by the admission and display of highly prejudicial and inflammatory photographs and medical examiner charts. Jackson claims that the probative value of the photographs was substantially outweighed by their danger of unfair prejudice to the jury.

■ ¶ 96 The photographs complained of depict the injuries sustained to the

victim and photographs of the crime scene.[7] The test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether their probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State,* 1993 OK CR 41, ¶ 24, 862 P.2d 1273, 1280, *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); 12 O.S.1991, § 2403. Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion. *Id.* A trial court's decision to allow the introduction of photographs will not be disturbed absent an abuse of discretion.

¶ 97 Jackson claims that the cause of death and placement of wounds was not disputed at trial; therefore, the photographs were not relevant. Photographs depicting murder victims can be probative in many respects. They can show the nature, extent and location of wounds, depict the crime scene and corroborate a medical examiner's testimony. *Willingham v. State,* 1997 OK CR 62, ¶ 38, 947 P.2d 1074, 1083. In addition to the aforementioned examples, the photographs, which showed the wide ranging locations of the victim's wounds, were relevant to the jury's determination of malice aforethought.

■ ¶ 98 Jackson also argues that the introduction of the photographs during the second stage of trial resulted in a sentencing procedure that did not meet constitutional requirements. Photographs admitted during second stage were relevant to show the extent of the injuries and allow the jury to decide whether the injuries caused physical suffering or amounted to torture. There was no error in admitting the photographs of the victim in this case in either the first or second stage of trial.

■ ¶ 99 In the fourth sub-proposition of proposition seven, Jackson argues that the medical examiners testimony regarding whether Cade suffered pain from cuts inflicted on her body was irrelevant to prove Jackson guilty. At trial, Jackson only objected to this testimony on the ground that

the opinion was not within Dr. Balding's knowledge. When a specific objection is made at trial, no different objection will be considered on appeal. *Al–Mosawi v. State,* 1996 OK CR 59, ¶ 22, 929 P.2d at 278. Therefore, Jackson has waived all but plain error. We find that this testimony did not constitute plain error.

## VIII. OTHER PROPOSITIONS

¶ 100 Jackson next urges us to reconsider the constitutionality of Oklahoma's death penalty scheme generally and specifically because it requires a jury to make special findings of fact. We have upheld Oklahoma's death penalty scheme on both accounts. *Duckett v. State,* 1995 OK CR 61, ¶ 91, 919 P.2d at 27.

¶ 101 In his fifteenth proposition of error, Jackson argues that if none of the errors are sufficient for reversal on their own, then the combined effect of the errors deprived him of a fair trial and the cumulative error requires reversal. As we have found no single error requiring reversal, we cannot find that the proceedings, as a whole, were unfair. We have consistently held that where there is no individual error there can be no reversal for cumulative error. *Fields v. State,* 1996 OK CR 35, ¶ 76, 923 P.2d 624, 638, *cert. denied,* —— U.S. ——, 117 S.Ct. 1704, 137 L.Ed.2d 829 (1997).

¶ 102 In proposition sixteen, Jackson requests that this Court review any issues improperly preserved by trial counsel for plain error and for ineffective assistance of counsel. We have reviewed the propositions waived at trial for plain error and have found none. Jackson has not shown, by specific instances, that the failure to preserve these errors at trial constituted ineffective assistance of counsel.

¶ 103 Jackson, in the alternative, asks that we remand the case for a evidentiary hearing to prepare an adequate record to determine whether trial counsel was ineffective. Again, Jackson has not pointed to spe-

---

7. The photographs included three photographs of the deceased at the motel room; six photographs of the bloody bathroom; one photograph of the blood stained carpet; and thirteen medical examiner photographs of injuries to Cade.

cific instances of conduct that should be explored in an evidentiary hearing.

## IX. MANDATORY SENTENCE REVIEW

■ ¶ 104 Pursuant to 21 O.S.1991, § 701.13(C), we must determine whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor and whether the evidence supports the jury's finding of the aggravating circumstance. The jury found the existence of two aggravating circumstances: the murder was especially heinous, atrocious or cruel and Jackson had previously been convicted of felonies involving the use of violence to the person. 21 O.S.1991, §§ 701.12(4) and 701.12(1). We have found that both of these aggravating circumstances were supported by sufficient evidence.

¶ 105 The mitigating evidence was summarized into an instruction for the jury which included Jackson's expressed remorse and sorrow over the death of Cade; Jackson's diminished capacity to appreciate the wrongfulness of his conduct through alcohol and drug consumption; the fact that he was under the influence of extreme mental or emotional disturbance; the fact that he was provoked by Cade; Jackson's contention that he did not intend or plan to kill Cade; Jackson's excellent record in prison; Jackson's family ties; the fact that Jackson must serve the balance of his prior thirty year sentence. Further, the jury was told that they could determine mitigation from the evidence presented.

¶ 106 When we independently weigh the mitigating evidence against the aggravating circumstances which were each proven beyond a reasonable doubt, we find the jury's determination that the aggravating circumstances outweigh the mitigating circumstances is amply supported by the record.

¶ 107 Finding no error warranting reversal or modification, Judgment and Sentence of the District Court of Oklahoma County is **AFFIRMED.**

CHAPEL, P.J., and JOHNSON, J., concur.

LUMPKIN, J., concurs in results.

STRUBHAR, V.P.J., and LANE, J., dissent.

LUMPKIN, Judge, concur in result:

¶ 1 I concur in the results reached by the Court in this case. However, I cannot join in the analysis and verbiage utilized by the Court as to several of the issues raised in this appeal.

¶ 2 I have previously stated my belief this Court should adopt a unified **Spuehler-type** approach to evaluating the sufficiency of the evidence in all cases, whether the evidence is direct and circumstantial, or whether the evidence is entirely circumstantial. See *White v. State*, 900 P.2d 982 (Okl.Cr.1995)(Lumpkin, J.: Specially Concurring). I continue to urge the Court to adopt that unified standard of review even as it applies to the proof of the state of mind and, in this case, our review of the determination by the trier of fact that the state had satisfied its burden of proof as to malice aforethought.

¶ 3 It appears the Appellant misconstrues the concept of when a lesser included offense instruction is warranted in a criminal proceeding. As we reiterated in *Willingham v. State*, 947 P.2d 1074, 1080 (Okl.Cr.1997),

> a lesser included offense is a part of the greater offense and the establishment of the essential elements of the greater offense necessarily establishes all the elements required to prove the lesser included offense. Stated another way, an offense is a lesser included one only where the greater offense cannot be committed without necessarily committing the lesser. *State v. Uriarite*, 815 P.2d 193, 195 (Okl.Cr.1991); *see also Jennings v. State*, 643 P.2d 643, 645 (Okl.Cr.1982) (the elements of a lesser included offense must necessarily be included in the offense charged).

*Willingham* established once and for all second degree depraved mind murder is not a lesser included offense of first degree malice murder. Likewise, it is readily apparent second degree (escape from a penal institution)

murder does not meet the criteria for a lesser included offense.

¶ 4 The Appellant's assertions that the trial court has a duty to instruct on all lesser included offenses seeks to embrace offenses that are not contained within the elements of the primary charge. Historically, convictions on a lesser included offense have been permitted because the lesser included offense is contained within the primary charge. Therefore, because it is a lesser included offense of that specifically charged, there is no due process problem. However, if it is not a lesser included offense, then a defendant has never been charged with that crime and the Court has not been vested with the authority to hold that person accountable for the uncharged crime. The United States Supreme Court, in *DeJonge v. Oregon*, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278 (1937), has held that a conviction upon a charge not made in the information would be a denial of due process. See also *Dunn v. United States*, 442 U.S. 100, 106, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743 (1979). The Supreme Court has also stated it offends due process where an appellate court upholds a conviction on grounds that were not charged in the information nor the basis of the conviction. *See Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948); *Dunn v. United States, infra.* Similarly, this Court has stated that while "an insufficient information cannot support a conviction, it can support a conviction for any lesser included offense which is properly alleged." *Morris v. State*, 603 P.2d 1157, 1161 (Okl.Cr.1979).

¶ 5 Granted, if a defendant requested an instruction of an offense not charged, one which is not a lesser included offense, the Court could say the conviction for that offense would be invited error. However, how can we have invited error and sustain a conviction when a person has never been charged with that crime? *See also Schmuck v. United States*, 489 U.S. 705, 716–718, 109 S.Ct. 1443, 1441–1452, 103 L.Ed.2d 734 (1988).

¶ 6 I would agree that First Degree Manslaughter, heat of passion, could be a lesser included offense of malice murder, based on an analysis of the elements of each offense, i.e. whether the elements of the lesser are included within the elements of the primary charge. To determine whether First Degree Manslaughter, heat of passion, is a lesser included offense of malice murder, one must look at intent, i.e. the malice aforethought intent to take human life versus a sudden heat of passion. I submit that the concept of heat of passion is fairly embraced and included within the element of pre-meditation. *See Schmuck*, 489 U.S. at 720, 109 S.Ct. at 1452; *Stevenson v. United States*, 162 U.S. 313, 320, 16 S.Ct. 839, 842, 40 L.Ed. 980 (1896). A defendant in his defense could present evidence that he killed the person, knew what he was doing, but had a sudden heat of passion and that passion is what caused the homicide. Based on the evidence presented, the trial judge could find it sufficient to warrant an instruction on the lesser included offense of First Degree Manslaughter, heat of passion.

¶ 7 A survey of the statutes of first degree murder and first degree manslaughter in all fifty states reveals several states have statutes similar to Oklahoma's.[1] In each of these states, manslaughter is a lesser included offense of first degree murder. In *Wallace v. Indiana*, 182 Ind.App. 256, 395 N.E.2d 274, 275 (1979), the Indiana Court of Appeals was faced with the issue of determining whether or not heat of passion manslaughter could be a lesser included offense of malice murder. In finding it could, the Court reasoned:

Voluntary manslaughter is an unlawful, intentional killing of a human being, without malice and with premeditation. Although the statute adds 'upon a sudden heat,' it is only in the application of the definition to a given case that this element must be made use of, for there could be no such thing as an unlawful intentional killing without malice, unless it was done upon a sudden heat. This mitigating fact reduces the crime to manslaughter, if upon the whole evidence

---

1. These states include California, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Nebraska, South Dakota and Wyoming.

it appears sufficient to rebut the presumption of malice arising from a voluntary killing.

*Id.* 395 N.E.2d at 275. That is the type of analysis that should be applied to our statutes.

¶ 8 In this case, counsel requested several instructions on what he argued were lesser included offenses to malice murder. As acknowledged in the Appellant's brief, the trial court refused all of the requested instructions except for the first degree heat of passion manslaughter instructions.[2] In accordance with the above analysis, I find the trial judge gave the only lesser included instruction which was warranted in this case. The other requested instructions do not raise an issue of a lesser included offense of malice murder. Therefore, Appellant had no right to receive an instruction for an offense that was not fairly embraced within the primary charge. In this case, only first degree heat of passion manslaughter was appropriate.

¶ 9 As a part of the alleged errors raised in Proposition VIII, relating to instructions on lesser included offenses, Appellant also raises an issue regarding voluntary and involuntary intoxication as a theory of his defense. In addressing this issue as it relates to a defendant's theory of defense, the Court states that it finds "it necessary to clarify the test to be used". However, that clarification, in effect, creates more confusion for trial practitioners and judges regarding when a defendant's theory of defense has been sufficiently supported by evidence to warrant an instruction.

¶ 10 In *Kinsey v. State*, 798 P.2d 630, 632 (Okl.Cr.1990), we said "a defendant is entitled to an instruction on his theory of defense where there is evidence to support it, even if such evidence is discredited". We stated further:

[t]o warrant a separate instruction, a defendant's theory of defense must be a legal defense recognized in the law i.e. statutes or case law, ... Legal defenses are matters which go to the legal exoneration of guilt or evidence which may reduce the charge to a lesser included offense. Once presented, it is then the responsibility of the trial judge to determine if the evidence is sufficient to support the instruction. The defendant is then entitled to an instruction on any theory of defense supported by the evidence, as long as that theory is tenable as a matter of law. [citations omitted]. *Id.* at 633.

¶ 11 I agree with the Court's statement in footnote 5, that it is the responsibility of the trial judge to determine if the evidence is "sufficient" to support the defense instruction and that sufficient means a defendant has presented the quantum of evidence required to establish a prima facie showing of the defense. However, I am concerned about language in the opinion indicating the evidence should not be weighed by the trial court and the Court's use of "evidence" or "enough evidence" terminology when the standard of proof is "sufficient evidence".[3] As stated previously, I find the use of this "any evidence" terminology unsupported in the law. *See Nance v. State*, 838 P.2d 513, 517–18 (Okl.Cr.1992) (Lumpkin, J.: Concur in Part/Dissent in Part). All this language does is say the Court will not be bound by any objective standard for review or provide the trial court with any clarification as to what standard applies.

¶ 12 The problem is, the trial court *must* weigh the sufficiency of the evidence in order to decide whether an instruction should be

2. The Court's confusion regarding which instructions were requested and given can be resolved by a review of the record. Appellant's requested instructions on Manslaughter referenced OUJI–CR 455 which is the "Manslaughter in the First Degree by Heat of Passion–Elements" instruction from the original OUJI–CR instruction book. Under that instruction, element three had two options, i.e. "Inflicted [in a cruel and unusual manner] [or] [by means of a dangerous weapon]". Instruction 24 given by the Court in this case tracks OUJI–CR 455 and references OUJI–CR 912, the instruction format for lesser included offenses. Therefore, whether construed as a manslaughter first degree heat of passion or dangerous weapon instruction, it is a proper instruction of the law under the facts of this case.

3. In this case, the burden is confused when in Paragraph 68 the Court says "[w]e find that Jackson has failed to present evidence ..." and then in Paragraph 70 says "[w]e find that Jackson failed to present enough evidence ..."

given. Some weighing of the evidence is necessary in order to determine whether a prima facie showing has been made. North Carolina has achieved a nice balance to this problem by holding that "in determining whether to give the substance of an instruction concerning a defense, the trial court must assess the evidence first for the legal principle it implicates, and second for the sufficiency. of the evidence itself". *North Carolina v. Marshall,* 105 N.C.App. 518, 414 S.E.2d 95, 97 (1992). "[T]he measure of legal sufficiency is the 'any competent evidence' standard.... Therefore, if there is any competent evidence in the record when viewed in the light most favorable to the defendant from which the jury could determine [the existence of the defense theory], then the defendant is entitled to instruction on the defense [theory]." *Id.* The Supreme Court of Idaho adopted a slightly different terminology in applying the same type of standard. That Court established the following four-step analysis for dealing with defense theories and lesser included offense instructions: (1) Identify the specific elements necessary for the requested instruction; (2) Define the statutory elements, or as is the case, the common law elements of the requested instruction; (3) Consider the evidence presented to determine whether such evidence supports the requested instruction; and (4) If the requested instruction is not supported by the evidence, the Court must reject the requested instruction. *See Idaho v. Howley,* 128 Idaho 874, 920 P.2d 391, 395–96 (1996). In *Michigan v. Lemons,* 454 Mich. 234, 562 N.W.2d 447, 454 (1997), the Court defined prima facie evidence as "evidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient to sustain a judgment in favor of the issue which it supports."

¶ 13 The Court's statement in this opinion that "[t]he evidence of the defense may come from any source and should not be weighed by the trial court" is in direct conflict with a large body of law defining the role of the trial judge in the course of a trial and the responsibility of determining when an instruction on a theory of defense should be given. When determining whether sufficient evidence has been presented to warrant the giving of an instruction, it is elementary that the trial judge must "weigh" the evidence. The judge must determine whether legally sufficient and competent evidence has been put forth to establish a prima facie showing which would warrant an instruction on that defense. In determining whether a prima facie showing has been established by competent evidence, the trial judge must analyze the evidence presented, together with the burden of proof and the elements of the defense.

¶ 14 Rather than clouding the issue of when an instruction on a defendant's theory of defense should be given, we should truly clarify the objective criteria trial judges can utilize. I urge the Court to further delineate the objective process we set out in *Kinsey* by adopting additional criteria drawn from the jurisdictions set out above. We should establish the following procedure for applying the standard set out in *Kinsey:*

1. To warrant a separate instruction, a defendant's theory of defense must be a legal defense recognized in the law, i.e. statutes or caselaw. (*Kinsey* at 633)

2. Legal defenses are matters which go to the legal exoneration of guilt or evidence which may reduce the charge to a lesser included offense. (*Kinsey* at 633)

3. Once presented, it is the responsibility of the trial judge to determine if the evidence is sufficient to support the instruction. (*Kinsey* at 633)

4. The measure of legal sufficiency is the "any competent evidence" standard as applied to establishing a prima facie proof of the defense. Therefore, if there is any competent evidence in the record, viewed in the light most favorable to the defendant, from which the jury could determine the existence of the legal defense, then the defendant is entitled to an instruction on the defense.

5. In applying the "any competent evidence" standard, the Court should (a) Identify and define the specific elements

necessary for the requested instruction, i.e. either statutory or case law elements for the defense; (b) Consider the evidence presented which meets the standard to determine whether such evidence supports each element of the defense; and (c) If the requested instruction is not supported by competent evidence the Court must reject the requested instruction.

6. In deciding whether a defendant has established a prima facie proof of the defense using the "any competent evidence" standard, the Court shall determine if the competent evidence presented is good and sufficient on its face. That means evidence which, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the defendant's claim or defense, and which if not rebutted or contradicted, will remain sufficient to sustain a judgment in favor of the issue which it supports. The issues of whether the evidence has been rebutted or contradicted are questions of fact for the jury to decide under proper instructions by the Court. The Court shall review the evidence presented to determine if the defendant has established prima facie proof of the defense which would warrant an instruction on the defense without speculating on whether the jury will find the evidence contradicted or rebutted.

¶ 15 Applying this criteria to the facts of this case, I agree with the Court that Appellant failed to present sufficient evidence to support the giving of instructions on voluntary intoxication.

¶ 16 As I have stated many times before, we need to be consistent and give the trial court clear guidance as to the rule of law to be applied and the standards to be utilized in determining the application of that rule of law. Both in its' discussion of lesser included offenses and instructions on a defendant's theory of defense, the Court confuses rather than clarifies the issues. Rather than giving objective criteria the Court creates many shades of gray which do not enhance the administration of justice in our courts. By establishing clear, objective criteria in our

analysis of issues on appeal, we provide the helpful guidance trial practitioners and judges deserve. At the same time, we discipline ourselves by providing a consistent method for reviewing the cases which come before us on appeal. That discipline ensures the consistent application of these principles and protects the system of justice from natural human vacillation based upon how individuals might view the facts after the fact.

LANE, Judge, dissenting:

¶ 1 I respectfully dissent to the result reached by the majority of this Court. I applaud and concur with the majority's clarification of the test to be used in determining whether an instruction on a defendant's theory of defense should be given. However, the majority falls into the same trap as the trial court by picking out evidence which "belies" or discredits the evidence supporting the defense and misapplies the test announced. The weighing of the evidence by the majority is a job left for the jury. "It is for them, generally, and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story." *United States v. Bailey*, 444 U.S. 394, 414–15, 100 S.Ct. 624, 637, 62 L.Ed.2d 575 (1980).

¶ 2 I find that the District Court's failure to instruct on the defense of voluntary intoxication constituted an abuse of discretion and created reversible error. Using the test announced by the majority, I would find that there was evidence presented which would support a prima facia case of voluntary intoxication.

¶ 3 Jackson testified, during the first stage of trial, that he consumed a "fifth"[1] bottle of what he thought was Alize, an alcoholic beverage of unknown alcohol content, less than half of a quart bottle of 3.2 beer and took two puffs of a marijuana cigarette prior to the events that caused Ms. Cade's death. Jackson started drinking the Alize at about 10:15 a.m. and finished drinking the bottle within 15 minutes. Jackson took the two puffs of the marijuana cigarette before they purchased fried chicken for lunch.

---

1. A "fifth" is one fifth of a gallon or four fifths of a quart. *Webster's II New Riverside University*

*Dictionary* 476 (1988). A 750 ml bottle is usually called a "fifth."

Jackson drank the beer after getting the chicken but before stopping at the motel.

¶ 4 Appellant testified that he was feeling "high" when he got to the motel room. Jackson did not remember going into the motel room, but remembers parts of being in the room. He guessed that he was "under the influence of intoxicating liquor" at the time.

¶ 5 Jackson remembered having sexual intercourse with Ms. Cade. He remembered that after that they sat talking about their relationship. He got up from the bed and went to the shower. He turned around and Ms. Cade was standing there hollering, screaming and kicking and hitting him. He said that he grabbed her and they wrestled to the floor.

¶ 6 Jackson did not remember how he got the box knife in his hand. He testified that he didn't remember cutting her. The next thing he remembered was sitting on the bed. He didn't remember wrapping the box knife in a wash cloth and putting it under the mattress. He didn't remember taking Ms. Cade's jewelry or watch. He remembers being in the Jeep after that, but didn't remember driving the Jeep.

¶ 7 The next thing he remembers clearly is being in a field, getting up and starting to walk. He remembers getting a ride from three guys who took him to some apartments on Southeast 15th where his sister worked. He got to the apartments at about 6:00 or 6:30 p.m.

¶ 8 Jackson testified that he didn't remember everything because, "[b]esides being upset, I guess I was high off the beer and that bottle of stuff, I guess. I don't know." This equivocating testimony alone would not be sufficient to show that Appellant was so intoxicated that he could not form malice aforethought. However, Jackson presented testimony regarding how alcohol, in an amount consumed by him, would effect a person.

¶ 9 Dr. Donica testified that, if two hours had elapsed after Jackson drank the alcohol and beer, his blood-alcohol content would be .19%. Donica testified that a person with a .20% or greater blood-alcohol level would be in a stupor with markedly diminished awareness of things going on around him and have diminished ability to focus attention or to perceive what is happening around him. He would also have severely impaired motor functioning. The testimony of Jackson along with the testimony of Dr. Donica was sufficient to support the giving of instructions on the defense of voluntary intoxication.

¶ 10 The trial court decided not to give the instruction on voluntary intoxication. In doing so, the court weighed Jackson's in-court testimony against his earlier video taped confession. The trial court believed that Jackson related sufficient details about the events leading to the death of Ms. Cade and sufficient details of events after the death to negate the instructions on voluntary intoxication.

¶ 11 However, in ruling that the instruction was not warranted, the trial court stated "based upon that, this Court did not believe that Mr. Jackson demonstrated beyond a reasonable doubt that he was incapable of performing the requisite malice aforethought elements of the murder in the first degree offense, which put the Court in the position of not granting those instructions for the reasons I have articulated in the record."

¶ 12 The trial court's recitation that he did not believe that Jackson had "demonstrated beyond a reasonable doubt" his theory of defense shows the trial court's complete abuse of discretion. This Court has never adopted a standard so high. Even our most recent cases do not announce a test so high.

¶ 13 The test found in *Valdez v. State*, 1995 OK CR 18, ¶¶ 56–57, 900 P.2d 363, 379, *cert. denied*, 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 and *Charm v. State*, 1996 OK CR 40, ¶ 13, 924 P.2d 754, 761,[2] that a defendant is required to present evidence sufficient to raise a reasonable doubt concerning his ability to form the specific intent to kill because of intoxication before instructions must be given, is plainly wrong. Once a defendant presents evidence of a defense, it is the State's burden to prove beyond a

**2.** In *Charm*, the voluntary intoxication instructions were given, but the jury did not have the option of a lesser included offense. Therefore, it is distinguishable from the present case.

reasonable doubt that the defense is invalid or unbelievable.

¶ 14 In one of the primary cases on the giving of defense instructions we stated that "the jury must be advised of defendant's theory of defense where there is evidence to support it, even though such evidence is discredited." *Holt v. State*, 1955 OK CR 2, ¶ 112, 278 P.2d 855, 857; *also see Tully v. State*, 1986 OK CR 185, ¶ 17, 730 P.2d 1206, 1211. In *Nance v. State*, 1992 OK CR 54, 838 P.2d 513, 515, this Court held that a criminal defendant must be afforded the opportunity to have a jury consider his theory of defense regardless of the relative merit of the evidence offered in support of the defense. "Any evidence, without consideration of its veracity, in light of the weight of the evidence, requires that instruction be given so that the jury may make the ultimate decision whether to accept or reject the offered defense." *Id.* (citations omitted).

¶ 15 In the present case, Jackson did not testify that he had sufficient recollection to give details concerning events prior to, during or after the death of Wendy Cade. The trial court thought otherwise and believed that Jackson had not provided sufficient evidence to show "beyond a reasonable doubt" that he was so intoxicated that he could not form the requisite malice aforethought element. Furthermore, as evidence of an abuse of discretion, the trial court, in his Capital Felony Report, indicated that the evidence did not foreclose all doubt respecting Jackson's guilt and that the trial court believed that Jackson was under the influence of alcohol.[3] Clearly, the trial court believed that intoxication was a factor in this case. However, his rendition of an improper test caused him to abuse his discretion.

¶ 16 It is both the weighing of the evidence and the use of a clearly improper test that constituted an abuse of discretion in this case. A defendant does not have to provide sufficient evidence to prove his defense beyond a reasonable doubt in order to get a defense instruction. He only has to provide evidence to support the defense. Then it is

up to the jury, on proper instructions, to decide if the evidence is sufficient. For these reasons, this case must be reversed and remanded for a new trial.

¶ 17 I am authorized to state that Judge STRUBHAR joins in this dissent.

---

**3.** Section C, Questions 11 and 26 of form 13.12, *Rules of the Court of Criminal Appeals*, 22

O.S.Supp.1997, Ch. 18, App.